M. L. MEACHAM & CO. ET AL *v.* LINA D. PINSON.

1. INSOLVENT ESTATE. *Dividend. Pro rata. Interlocutory order. Case in judgment.*

C. borrowed of Mrs. P. $6,000, and gave his promissory note to her for that amount, embracing in it the stipulation to pay all attorneys' fees expended in collecting it, and depositing with her as collateral security $8,000 in certificates of stock in a certain bank. C. made default in the payment of his note, and died; and P. recovered judgment in the Circuit Court against the bank on the certificates of stock in an amount exceeding the sum due on the note. Upon appeal to this court it was held that she was only entitled to recover the amount due for loaned money, there being no proof as to the attorneys' fee. P. entered a *remittitur* of all above the amount due for the loan, and judgment was rendered accordingly. During the pendency of that suit C.'s estate was placed in the hands of a receiver, and was being administered in the Chancery Court as an insolvent estate; and P. probated against it her claim for $6,000. A dividend of twenty per cent was decreed upon all probated claims, thereby awarding a *pro rata* of $1,200 to P.; but the receiver refused to pay anything to P. until the termination of litigation between her and the bank. After that litigation terminated, she obtained from the Chancery Court an order directing the receiver to pay her so much of the dividend theretofore decreed to her as was necessary to liquidate her attorneys' fees in her suit against the bank, which she proved to be $1,050. From that order the other creditors of C. appealed. *Held,* that the order appealed from was erroneous. P. was entitled to a *pro rata* on the amount of her attorneys' fees, that being the extent of her claim against C.'s estate after her *remittitur,* and to no more; and her rights in this respect were not enlarged by the existence of the former decree awarding her a dividend of $1,200, such decrees being interlocutory and subject to the control of the court till the winding up of the estate.

2. SAME. *Appeal. When a dismissal not a bar.*

In the case above stated the receiver appealed from the order directing him to pay to P. the amount of her attorneys' fees; and the appeal was dismissed by this court on the ground that the receiver had no interest in the matter, and being the mere organ of the court, could not refuse to obey, nor appeal from, its decrees. Upon this appeal, taken by creditors of C.'s estate, it is

insisted that the dismissal of the receiver's appeal is a bar to the prosecution of the present appeal. *Held*, that such dismissal constitutes no bar to this appeal.

8. PROMISSORY NOTE. *Stipulation for payment of attorneys' fees.*

A stipulation in a promissory note for money that the maker will pay (in addition to the principal and interest agreed to be paid) the amount of all attorneys' fees which the payee may have to expend in the collection of the note is not contrary to public policy, nor usurious.

APPEAL from the Chancery Court of Marshall County.

Hon. A. B. FLY, Chancellor.

A statement of the case will be found in the opinion of the court.

*Featherston & Harris*, and *Fant & Fant*, for the appellants.

1. The question presented in this case was decided in the case of the *Bank of Holly Springs* v. *Pinson*, 58 Miss. 421 ; or if not so decided it was the fault of Mrs. Pinson. She sued the bank in the Circuit Court, and recovered against it the full amount of her debt and interest, as evidenced by the note of Crump & Co. The same note provided, on its face, for the payment of the attorneys' fees by Crump & Co., as much so, as it did for the payment of the debt and interest. If the Circuit Court had jurisdiction as to the debt and interest, it had of the other — of the fee; both were embraced in the same contract, — in the note. The court had full jurisdiction of both items, both branches of the one contract. If the question presented in this case was not presented then, it was the fault of Mrs. Pinson. "An adjudication is final and conclusive, not only as to the matter actually determined, but as to every other matter which the parties might have litigated and have had decided, as incident to, or essentially connected with, the subject-matter of the ligitation, and every matter coming within the ligitimate purview of the original action, both in respect to matters of claim and of defence." Freem. on Judg. sect. 249 ; *Lawson* v. *Shotwell*, 27 Miss. 634, 635 ; *Stewart* v. *Stebbins*, 1 Geo. 66 ; *Shattock* v. *Miller*, 50 Miss. 391 ; *Bell* v. *Medford*, 57 Miss. 35 ; *Agnew* v. *McElroy*, 10 Smed. & M. 552.

2. Mrs. Pinson could not recover her lawyers' fees out of the general fund arising from the assets of Crump & Co., in the hands of the receiver, George M. Buchanan, in any event. She received from Crump & Co., as collaterals, the bank stock, when the note was given for the loan of the money. She held the collaterals as a trustee, and was bound to act in good faith to the general creditors of Crump & Co., as well as to Crump & Co., and to the bank which claimed the collaterals. She sued on the collaterals, or attempted to make her debt against Crump & Co. out of the collaterals, and was bound to make her whole debt out of them. She could not make a part of her debt out of them, and then surrender them, and seek to make the balance of the debt out of the general fund in the hands of the receiver, as she seeks to do in this case. In that event, gross injustice would be done the general creditors of Crump & Co. The sum she now asks and demands would be taken from the fund of the general creditors, and which but for her negligence would have been made out of the collaterals in her hands. The general creditors would lose the sum involved in this case. *Meyer* v. *Blakemore*, 54 Miss. 570 ; *Wright* v. *Watt*, 52 Miss. 637–648 ; *Payne* v. *Commercial Bank*, 6 Smed. & M. 38, 39.

3. But we deny, that the provision in the note of Crump & Co. for the payment of the fees of the lawyers of Mrs. Pinson, in collecting her debt, was binding and valid. Such a stipulation cannot be enforced in any court. It is void for the following reasons : 1. It is against public policy. It encourages litigation. 2. It renders the contract usurious. Eight hundred dollars was the lawful interest on Mrs. Pinson's debt in the case tried in the Circuit Court ; but if she succeeds in this case, she will get eighteen hundred and fifty dollars. 3. It is a stipulation for a penalty, and is void. *Bullock* v. *Taylor*, 39 Mich. 137 (opinion by Cooly) ; *Meyer* v. *Hart*, 40 Mich. 517 ; *Thompson* v. *Townsend*, 10 Bush, 114.

4. All orders of the Chancery Court, made subsequent to the appointment of the receiver, such as direct him to distri-

bute the funds on hand, and to sell choses in action, and to manage the property under the direction of the court, are interlocutory. The whole proceeding is *in fieri* until the business has been wound up and a final decree made and entered. Interlocutory decrees may, at any time, be modified or set aside by the Chancery Court. *Ludyard* v. *Henderson,* 46 Miss. 268 ; *Kimball* v. *Alcorn,* 45 Miss. 149.

5. But we submit, that if the appellee ever had a valid claim for attorneys' fee, that she has remitted, relinquished, and forever surrendered it. In the case of the *Bank of Holly Springs* v. *Pinson,* 58 Miss. 421, the opinion of the court concludes thus : " We therefore conclude that the corporation had no lien as against the rights of Mrs. Pinson. Probably, the lien exists as against the Crumps, and for this reason the judgment will be reversed, so that the recovery of Mrs. Pinson may be limited to the amount of her debt and interest, and the reasonable attorneys' fees stipulated to be paid in the contract of loan. And the defendant in error (Mrs. Pinson), agreeing to remit all but the principal and interest of the debt, and that judgment should be entered for that amount, it is ordered accordingly." Could language be plainer than the above? She agrees to remit all but her debt and interest. The attorneys' fee is expressly mentioned in the opinion, but she remits it, and is willing to take only the debt and interest.

6. The parties who are the present appellants were never before in this court, and had no connection with the former appeal by the receiver. They stand before it for the first time in their own right, and took the appeal within the time prescribed by law. Shall their appeal be now dismissed because some other party, with whom they had no connection, took an appeal in the case, and his appeal was dismissed. The right of the appellants to appeal is a very clear one, and can they be deprived of this right by a mere technicality arising out of a most strict, rigid and unprecedented construction of the general law granting appeals. See *Sherman* v. *Lovejoy,* 1 Geo. 109 ; *Bull* v. *Harrell,* 7 How. 11.

*A. M. Clayton*, for the appellee.

This is in all essential respects, the same case with *Buchanan, Receiver*, v. *Pinson*, which was dismissed last January by this court, for want of proper parties. This is an effort to cure the defect by the substitution of other parties, creditors of Crump & Co. The obstacles in their way will probably be found insuperable.

An appeal must be in the name of all the parties ; if some will not join, they must be severed by proper proceedings. *Green* v. *Planter's Bank*, 3 How. 43 ; *Thomas* v. *Wyatt*, 9 Smed. & M. 308 ; *Whitworth* v. *Carter*, 41 Miss. 639 A second writ of error or appeal to revise the same judgment is not allowable, unless the first were dismissed without fault of the plaintiff in error or appellant, and for a cause over which he had no control. *Sherman* v. *Lovejoy*, 1 Geo. 105. No excuse is offered by these appellants for their failure to join in the first appeal. It was their answer on which the decree was founded ; they were in court, had full control of their own acts, and it was their own fault that they did not join in the appeal. There would be interminable litigation if first one party and then another were permitted to make experiments by several and separate and successive appeals. The principle here invoked is fully recognized and enforced by our statute. Code, sect. 2319.

The enforcement of her right by Mrs. Pinson is opposed, not upon the ground that there has been any actual payment or satisfaction of it, but upon the ground that in the suit at law she might have claimed the attorneys' fees and costs, and that having failed to do so, the principle of *res adjudicata* estops her from doing so now that the point as to the fees was so involved in the suit against the bank that it should have been decided in that case, and that Mrs. Pinson is thereby concluded, as well as by the *remittitur* which was entered.

This objection is susceptible of an easy answer. That judgment was not given for the stipulated fees of the attor-

neys, because no proof had been offered on the point in the court below. They were not necessarily involved in the suit with the bank, for the reason that said suit was founded on a collateral security for the note of the Crumps, and not on the note itself. A judgment on a collateral security does not merge or extinguish the note for the original debt. *Hawks* v. *Hinchcliff*, 17 N. Y. 504.

The agreement to pay the attorneys' fees was in the note of the Crumps, and not in the certificates of stock. The suit against the bank was not on their note and could not have been. 2 Kent's Com. 289; Ang. & Ames on Corp. (10th ed.), sect. 381, p. 373. It was evidence in the case, not the *gravamen* of the suit.

Is the appellee, Mrs. Pinson, here estopped by the doctrine of *res adjudicata* from pursuing her remedy. This doctrine is clearly laid down by this court in the recent case of *Hubbard* v. *Flint*, 58 Miss. 268, and by the Supreme Court of the United States, in *Cromwell* v. *The County of Sac*, 94 U. S. 554. These cases establish the point, that the doctrine of estoppel by judgment or *res adjudicata* does not apply, if the particular point was not necessarily involved in the former suit. If it was not passed upon, and it was not necessary to pass upon it, then it can never amount to an estoppel.

The *remittitur* on the former appeal has no effect upon the present case. Bouvier's Law Dictionary thus defines a *remittitur*: "An entry on the record, by which the plaintiff declares that he remits the damages, or a part of the damages, which have been awarded to him by the jury." A *remittitur* is different from a release, in this that the former relates to a special single matter, the latter is general.

When the *remittitur* was entered, the decree in the Chaning Court against the Crump assets in favor of Mrs. Pinson was in full force; she had the right to elect between this decree and a judgment on the collateral. She elected the decree, and if it be said now that she had no right to make

the election, she is cut out of $1,050.75 justly due to her by a technical, arbitrary, and inappropriate rule of law, with no just application in this instance.

The decree appealed from fulfils all the conditions which enter into the definition of a final decree. A final decree is one which settles the rights of the parties and only leaves its execution to be carried out. When this is done, the work of the court in that matter is done. *Stebbins* v. *Niles*, 13 Smed. & M. 310; *Torrance* v. *Kerr*, 27 Miss. 787; *Ledyard* v. *Henderson*, 46 Miss. 260; *Cromwell* v. *Craft*, 47 Miss. 44; *Isom* v. *McGhee*, 45 Miss. 712.

In *Ledyard* v. *Henderson*, 46 Miss. 269, it is held that a decree ascertaining the amounts due to distributees and ordering payment by the administrator is a final decree. To the same effect is *Saunders* v. *Gregory's Heirs*, 3 Heisk. 567; *Mick* v. *Mathis*, 1 Heisk. 534; 10 Wall. 583. Freeman on Judgment, sect. 23, *et seq.*, says: "A decree is final which determines the rights of property, and it is no less final, because it directs further steps to be taken in carrying it into effect." Dan. Ch. Pr. 986.

It is also urged for the appellants that the stipulation for the payment of attorneys' fees and costs in the note is illegal and void, for various different reasons. The very variety of grounds on which the decisions rest forms a strong argument against them. Numerous cases are cited in support of the position, most of which are collected in 39 Mich. 137.

Those which relate to usury, in States whose statutes make contracts of usury void, and those which refuse to enforce contracts where the fees were so out of proportion to the services rendered and the amounts involved in suit as to shock the conscience, have no application here.

There are some which hold the stipulation void, because it is in the nature of a penalty. These rest on a very equivocal foundation. Sedgwick in his work on Damages, pages 460 and 476, shows what thin partitions divide the case of penalties from liquidated damages, and how difficult it is to decide

between them, and shows farther that even in the case of penalties, the courts that are governed by equitable principles, hold that the party must pay the actual damages that are incurred. Ibid. 476.

Those which rest the invalidity on the ground of public policy cannot be upheld, in the absence of legislative provision. What is public policy is matter that belongs to the law-making department, not to the judiciary. Where the Legislature annexed a liability for doing a particular act, but does not declare it void, the court cannot superadd it as a penalty. *Oates* v. *National Bank*, 10 Otto, 239. This is more emphatically true where there is no statute at all.

CHALMERS, J., delivered the opinion of the court.

Crump & Co. executed to Mrs. Pinson their note for $6,000 of borrowed money, embracing in it a stipulation to pay all attorneys' fees and costs expended in collecting it, and depositing, as collateral security, certificates of stock in the Holly Springs Savings Bank of the face value of $8,000. The debtors having died without making payment, Mrs. Pinson demanded of the bank a transfer to herself on its books of the stock, which was by the bank refused, on the ground that Crump & Co. were indebted to it in the sum of $6,000, and that, by its by-laws, the bank had a lien on the stock superior to that of Mrs. Pinson as assignee of the certificates.

In a suit brought by Mrs. Pinson against the bank for a conversion through this refusal of the stock pledged to her, she recovered judgment for its full value, though it amounted to largely more than the sum due for the loaned money and interest, and she had adduced no proof of the amount of her lawyers' fees and costs. On appeal here we affirmed the principles of law in her favor, but held that she was entitled under the proof only to the amount of the loaned money and interest, no proof as to the lawyers' fees having been made. To escape a reversal she entered a *remittitur* of all beyond the amount of the note and interest. The case is reported in 58 Miss. 421.

During the pendency of this suit the estate of Crump & Co. had been placed in the hands of a receiver and was being administered as an insolvent estate in the Chancery Court of Marshall County, and Mrs. Pinson had there probated her claim against it for the sum of $6,000. A dividend of twenty per cent had been decreed upon all the probated claims, and under this Mrs. Pinson was entitled to the sum of twelve hundred dollars, but the receiver declined to pay it over until the termination of the litigation between herself and the bank. That litigation having now ended, she has applied to and obtained from the Chancery Court an order upon the receiver to pay to her so much of the dividend heretofore decreed as is necessary to liquidate the attorneys' fees paid by her in the prosecution of her suit against the bank, which Crump & Co., by the stipulation of their note, had obligated themselves to pay.

She proved that those fees amounted to $1,050, and the court ordered the receiver to pay over that sum to her. From this order the present appeal is prosecuted by the other creditors of Crump & Co. The decretal order of the Chancery Court was erroneous. Mrs. Pinson was a creditor of Crump & Co. for the amount of the lawyers' fees in addition to the money borrowed by them, and these fees were originally as much protected by the collaterals deposited as was the loaned money; but when she voluntarily remitted in this court, in her suit against the bank, all beyond the amount due for money loaned, she made herself an ordinary unsecured creditor as to all else. When, therefore, she comes now to demand the balance due, to-wit: the lawyers' fees and costs expended in the former litigation, she must come as other unsecured creditors and accept with them a *pro rata* upon her debt.

Her rights in this respect are not enlarged by the former decree awarding to her a dividend of $1,200. Such orders are interlocutory in their character, and are subject to the control of the court until the final winding up of the estate. Neither would her rights be different if the dividend in her favor had

been paid to her, as it ought to have been, at the time it was decreed. In that event the amount, $1,200, would have been indorsed upon her probated claim of $6,000. If suing upon it, thus credited, and failing to adduce any proof as to her lawyers' fees, she had nevertheless recovered a judgment for the full value of her collaterals, she could only have obtained an affirmance here, by entering a *remittitur*, sufficiently large to operate both as a credit for the $1,200 and an abandonment of all claims against the bank, and hence all claims upon the collaterals for the fees ; and when, thereafter, she went against the estate of her debtors for the amount still due by them for the fees, she would have occupied exactly the same attitude that she now does, that is to say, she would have been already paid off in full as to all save the fees, as to which, by her own action, she had made herself an unsecured creditor. As to these, therefore, treating that as done which ought to have been done, she is entitled only to the same *pro rata* received by other creditors.

The validity of the stipulation for the payment of lawyers' fees is assailed by counsel for appellants. The question has been much mooted elsewhere, and the authorities are not harmonious. We see nothing immoral or contrary to public policy or usurious in such contracts, and concur with those courts which hold them valid.

An appeal from the decretal order here considered was taken to a former term of this court by the receiver of the estate of Crump & Co. and was by us dismissed, upon the ground that he had no interest in the matter, and being the mere organ or hand of the Chancery Court for executing its will, could not refuse to obey its orders or appeal from its decrees. It is insisted that the dismissal of that appeal is a bar to the prosecution of this. This position is wholly untenable.

The former appeal, having been prosecuted by one who had no right to maintain it, was a nullity, which in no manner affected the rights of the real parties in interest.

Reversed and remanded for further proceedings in accordance with this opinion.