MERCHANTS' BANK OF GRENADA, MISS., v. THOMAS.

In re WRIGHT & BERRYHILL.

(Circuit Court of Appeals, Fifth Circuit. March 31, 1903.)

No. 1,221.

1. BANKRUPTCY—PROVABLE CLAIMS—PARTNERSHIP NOTES.

Under Bankrupt Act, 30 Stat. 562, § 63 [U. S. Comp. St. 1901, p. 3447], providing that fixed liabilities of a bankrupt, evidenced by a statement in writing, absolutely owing at the time of the filing of the petition, may be proved and allowed against his estate, notes signed by a bankrupt firm, which included claims on which one of the partners was not primarily liable, were prima facie debts provable against the firm.

2. SAME—DEBTS OF PARTNERS—PAYMENT BY FIRM—CONSIDERATION.

Where, on the consolidation of the business of two firms and the creation of a new partnership, such partnership agreed to pay the debts of its individual members to the amount of stock of goods contributed to the firm by each member, the mutual promises of the several partners and the reception of the goods contributed by them to the firm was a sufficient consideration for the firm's promise to pay such debts.

3. SAME.

On the organization of a partnership by a consolidation of the stocks of two other firms, the partnership agreed to pay the debts of the individual partners to the extent of goods contributed by them. A settlement was had between the partners and plaintiff bank, to which they were indebted, and notes were given for an indebtedness of one of the partners for which the firm was not liable. Such notes thereafter matured, as did another indebtedness of the firm for overdrafts, etc., when a settlement was had by which new notes were given by the firm for the entire indebtedness, including the notes of such partner, and the time of payment was extended, and the old notes surrendered. *Held,* that such extension of time was a sufficient consideration to render the firm liable for the prior debt of the individual partner.

4. SAME—INSOLVENT PARTNERSHIP—PAYMENT OF INDIVIDUAL DEBTS—CREDITORS ENTITLED TO OBJECT.

Where all the creditors of a bankrupt partnership who were such at the time the firm agreed to pay the individual debt of one of its partners in consideration of an extension of time, both for the debt of such individual partner and the debt of the firm to the same creditor, had been paid in full prior to the filing of the firm's petition in bankruptcy, the firm's agreement to pay such individual debt could not be attacked by the trustee or other creditors on the ground that it was a fraud on the firm's creditors.

5. SAME—ATTORNEY'S FEE.

Where notes given by a firm provided that if they were placed in the hands of an attorney for collection the makers and indorsers agreed to pay the holder an attorney fee of 10 per cent. on the amount due, and the maker thereafter became bankrupt, and the notes were placed in the hands of an attorney for collection, the attorney's fee provided was properly provable as a claim against the bankrupt's estate.

Appeal from the District Court of the United States for the Northern District of Mississippi.

Bankruptcy. Contest of claim.

The following is the evidence referred to in opinion:

"Q. Were you never dissatisfied with the manner in which the business was run? A. Yes, sir. Q. Did you not frequently make complaints to the officers of the Merchants' Bank? A. Yes, sir. Q. What did they tell you in regard to it? A. They would see Mr. Berryhill, and get him to make out a

statement, and it seemed to satisfy them all right. I insisted that they would see Mr. Berryhill, and ask him, because he kept on buying so many goods, and if he did not stop I thought we would be ruined. Q. This was of frequent occurrence with you within the last year of your connection with the firm of Wright & Berryhill, was it not? A. Yes, sir. * * * Q. The fact is, you had been paying all other creditors something, had you not? A. Yes, sir. Q. Then on the date of this assignment, on the 4th day of June, 1901, all of your indebtedness practically was paid that was then due, except the bank debt, was it not? A. Yes, sir; the majority of it. Q. You paid everybody else but the bank? A. Yes. Q. You paid all other creditors as your debts fell due? A. Yes, sir. Q. Now, the consideration that moved from the bank to you and to the firm of Wright & Berryhill when you executed those notes on the 15th of January, 1901, was it not the extension of the debts then due to the bank? A. Yes, sir. Q. All the debts owing by you and by the firm of Wright & Berryhill were past due on the 15th of January, 1901, were they not? A. Yes, sir."

W. C. McLean, for appellant.

S. A. Morrison (Robertson Horton, on the brief), for appellee.

Before PARDEE and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is a contest as to the validity of a claim against a bankrupt partnership. To make clear the questions involved, it is necessary to make a condensed statement of the facts.

Berryhill Bros., a firm composed of Walter Berryhill and S. N. Berryhill, were engaged in mercantile business. They had a stock of goods worth about $3,900. W. B. T. Wright was also engaged in mercantile business. He had assets worth about $4,500. Berryhill Bros. were indebted to the Merchants' Bank of Grenada, Miss., in the sum of about $4,300, and W. B. T. Wright was indebted to the bank in the sum of about $1,767.42. The Berryhills dissolved their partnership, S. N. Berryhill withdrawing, and Walter Berryhill assuming all the liabilities and taking all the assets of the firm. At the same time, April 1, 1898, W. B. T. Wright and Walter Berryhill formed a partnership under the firm name of Wright & Berryhill. The two stocks of goods—the one formerly belonging to Wright and the one formerly belonging to Berryhill Bros.—were put together as the property of the new firm of Wright & Berryhill. It was agreed between the members of the new firm that they owned the partnership assets in the proportion of $3,900, contributed by Walter Berryhill, to $4,500, contributed by Wright. The two debts to the Merchants' Bank remained unpaid, and constitute the beginning of the debt involved in this litigation.

On April 2, 1898, the Merchants' Bank, by its cashier, J. W. McLeod, made an agreement with W. B. T. Wright and Walter Berryhill, which recited that it was the purpose of the bank to put the debts which Berryhill Bros. owed the bank in "proper shape to follow said merchandise," referring to the merchandise which Walter Berryhill had contributed to the firm of Wright & Berryhill, "in order that said bank shall not lose all rights against the same," and reciting, also, that Wright was willing to execute firm paper to the amount of $3,000 for the purposes aforesaid, but only on certain conditions, which were stated. The conditions were for the protection of Wright, making the proceeds of the merchandise which Walter Berryhill had

contributed to the new firm especially liable for the $3,000 note. On the same day another agreement was made by the same parties, which recited that Berryhill Bros. and Walter Berryhill had executed another note to the bank for $1,000, and that Wright had indorsed the same, but "only as a stimulant to and persuasion of said first-named parties to pay same"; it being agreed that Wright should not be liable on the note except in the event that when the note for $3,000, referred to in the first contract "is paid, if there be a surplus interest of Berryhill Bros. or Walter Berryhill in the business, this note for $1,000 is to be good to the extent of the surplus."

The apparent purpose of the two contracts was to give the bank a claim on the goods once belonging to the firm of Berryhill Bros. for the debts which Berryhill Bros. and Walter Berryhill owed the bank. As evidence of part of the indebtedness herein referred to of Berryhill Bros. to the bank, Walter Berryhill on December 30, 1899, made two notes, each for $885, payable to the bank 12 months after date, and these notes were signed also by the firm of Wright & Berryhill; it being, however, expressly agreed that Wright should not be liable on the notes except in the event that when the notes for $3,000 and $1,000 described in the two previous contracts were paid there should be a surplus of the interest of Walter Berryhill in the firm business, then these notes were to be "good to the extent of such surplus." Walter Berryhill owed these debts to the bank, and Wright was apparently, from the inception of his partnership with him, willing to assume them as a member of the firm to the extent of the assets of the firm contributed by Walter Berryhill, and to the extent of the interest which the latter might have in the firm property.

Some payments were made on these notes, and they were renewed from time to time, interest being added. Prior to January 15, 1901, there had been renewals of these several debts by notes, all of which were signed by Wright & Berryhill. During this time the firm of Wright & Berryhill overdrew their account at the bank to the amount of $4,606.86. The bank was pressing Wright & Berryhill for a settlement of these several claims, and on January 15, 1901, they were all settled by five notes, which include all of the debts herein referred to, for which Wright & Berryhill had signed other notes, the overdraft for $4,606.86, and also the two notes for $885, for which Wright was only liable to the extent of any surplus which might remain in his hands of the interest of Walter Berryhill in the partnership after the satisfaction of the other two notes, as shown by the agreement of January 2, 1900. These five new notes are the ones contested in this case. They are each dated January 15, 1901, payable to the Merchants' Bank, and signed Wright & Berryhill, W. B. T. Wright and Walter Berryhill—one for $2,939.02, due February 15, 1901; one for $2,962.32, due March 15, 1901; one for $2,987.60, due April 15, 1901; one for $3,011.89, due May 15, 1901; and one for $3,036.17, due June 15, 1901. On July 15, 1901, Wright & Berryhill, as a partnership, were adjudged involuntary bankrupts. On July 24, 1901, the five notes last above described were by the Merchants' Bank, the appellant, presented and duly proved as claims against the bankrupts.

B. F. Thomas, the appellee here, having been appointed trustee in

bankruptcy of the bankrupts, filed before the referee a petition praying a reconsideration of the claim of the Merchants' Bank for two reasons: First, because the bank had received a preference from the bankrupts within four months next preceding the filing of the petition in bankruptcy; and, second, because the claim is not provable against Wright & Berryhill as a firm; that as to Wright the claim is without consideration, and that Berryhill alone, if any one, is responsible on the claim evidenced by the notes; and that, if the claim is allowed at all, it should be allowed against Berryhill individually. The bank answered the petition, denying that they received a preference, and denying that the claim is not provable against the firm of Wright & Berryhill. The claim, as proved, including the attorney's fee embraced in the five notes, amounted to $16,895.88. The referee reduced the claim by disallowing the following amounts, which were embraced by the five notes: One thousand dollars, being the note for that sum referred to in the contract of April 2, 1898; the two notes for $885 each, and interest thereon, referred to in the agreement of January 2, 1900; and the attorney's fee provided for by the notes. The claim, as allowed by the referee, was for $12,134.91.

The case went from the referee to the court of bankruptcy, both the Merchants' Bank and the trustee excepting to the referee's decision. The court held that the claim was provable only for the overdraft $4,606.86 and an item of $741.52, which reduced the claim as allowed to $5,348.38, and, judgment having been entered to that effect, the Merchants' Bank appealed to this court.

By the terms of the bankrupt act, debts of the bankrupt may be proved and allowed against his estate which are fixed liabilities evidenced by a statement in writing absolutely owing at the time of the filing of the petition against him. 30 Stat. 562, § 63 [U. S. Comp. St. 1901, p. 3447]. The five promissory notes signed by the bankrupts are prima facie debts provable against them.

There is no evidence in the case tending to show that the appellant received of the bankrupt any preference within four months before the filing of the petition in bankruptcy, or after the filing of the petition and before adjudication.

The objection that the notes are without consideration is equally untenable. When the partnership of Wright & Berryhill was formed, the stocks of goods held by each of them separately were merged. The partnership got the benefit of the stock held by each partner. The partners were then severally indebted to the Merchants' Bank for money advanced. A promise made by the firm to pay the debts of the individual members to the amount of the stock of goods contributed to the firm by each member is sustained not only by the consideration of the mutual promises of the several partners, but, the firm having received the goods, it is but just that it should assume the debts contracted for money to invest in the goods by the partners separately. "If a partnership is formed before goods purchased by one of the partners are paid for, and the partners agree that the new firm shall use and pay for the goods, and one of them gives the firm's note or acceptance to the seller in payment, this binds the firm. It is held to be on a perfectly good consideration, and

it is but just that the firm should assume the debt." I Bates on Partnership, § 515, and cases there cited.

When the five notes were made, the whole debt for which they were given was due, and the surrender of the notes and contracts evidencing the debt, and the extension of the time of payment, is sufficient legal consideration to support the notes. It is true that on January 15, 1901, the firm of Wright & Berryhill were not bound by the two notes for $885. Although signed by the firm, by a collateral agreement they were the obligations of Walter Berryhill only. But they were due, and an agreement to extend the debt evidenced by them, and also the debt shown by the other notes and the overdraft, was a sufficient legal consideration for the renewal of the two $885 notes, they being surrendered, and the new notes, including them with the other debts, being accepted in their place. By the settlement the firm obtained an extension of its entire debt. If the firm be considered, so far as the amount of the two $885 notes is concerned, as only the surety of Walter Berryhill, the contract is sustained by sufficient consideration to bind the firm. I Brandt on Suretyship, § 16.

This disposes of the questions raised by the written objections to the claim filed before the referee, for the only objections made were that a preference had been given and want of consideration. But another objection is made in the briefs and argument, and no question is raised as to the failure to make it formally before the referee and in the court of bankruptcy. It is contended that the claim is not provable because "an insolvent firm cannot assume the individual debts of the partners; it is a fraud upon the firm creditors, for insolvent partners must be considered as holding their joint property for the payment of their joint creditors." It is to this point that counsel on both sides have given most attention. If the partnership is solvent, all the partners consenting, the firm assets may unquestionably be used to pay or secure the individual debt of one of the partners (Huiskamp v. Moline Wagon Co., 121 U. S. 310, 7 Sup. Ct. 899, 30 L. Ed. 971; Schmidlapp v. Currie, 55 Miss. 597, 30 Am. Rep. 530); but when the partnership is insolvent there is conflict in the authorities on the question as to whether the assets of the firm may or may not be so used (Case v. Beauregard, 99 U. S. 119, 25 L. Ed. 370; Bank v. Durfey, 72 Miss. 971, 18 South. 456). It is evident, however, on principle, even where the firm is insolvent, that only existing creditors would have cause to complain, or, at least, that subsequent creditors could not impeach the transaction without showing the fraudulent intent of the parties. Horbach v. Hill, 112 U. S. 144, 5 Sup. Ct. 81, 28 L. Ed. 670; Sexton v. Wheaton, 8 Wheat. 229, 5 L. Ed. 603; Graham v. R. R., 102 U. S. 148, 26 L. Ed. 106. The general principle here stated is adopted by statute in Mississippi, for it is provided that the statutes condemning fraudulent conveyances (Rev. Code 1892, §§ 4226, 4227) shall not "in any case extend to creditors whose debts were contracted after such fraudulent act unless made with intent to defraud them." Id. § 4228; Hilliard v. Cagle, 46 Miss. 309.

The record does not clearly show the insolvency of Wright &

Berryhill at the time they executed certain notes assuming the individual debts of the members of the firm, prior to the making of the five notes on the last settlement with the bank. But it is clearly shown that on and shortly before January 15, 1901, when the five new notes were made, the firm was insolvent. Before that date the firm had never assumed the two notes of Berryhill for $885 each. The contention is that the assumption of these two notes by the insolvent firm is fraud, as matter of law, against the creditors of the firm. There is no evidence in the case to show a fraudulent intent. The aim of the bank was to secure the payment of the claim, and the purpose of the partnership was to secure and pay it. The alleged fraud is that as matter of law the partnership had no right to make a note that would cause partnership assets to be devoted to the payment of the individual debt of a member of the firm. We do not understand that either the referee or the court of bankruptcy found any evidence of fraud in fact in the transaction.

A partnership has the same dominion and control over its property that an individual has. It can sell it, mortgage it, pledge it, or give it away, all the partners consenting. The partnership, all the partners agreeing, may become the surety of another, or may assume the payment of the debts of another. All such acts by the partnership are subject to investigation and cancellation by the courts, just as such acts of an individual may be investigated and canceled. The acts of either the partnership or the individual are subject to attack for fraud, but only by those affected unfavorably by the acts.

Conceding, only for the purposes of the case, that the partnership of Wright & Berryhill, being insolvent, had no right to assume the payment of Berryhill's two notes for $885 each, and that such act was a fraud in law on the partnership creditors, we are then met by the question, what is meant by its "creditors"? The creditors meant in the application of this principle are those affected by the act—the creditors of the firm who held claims against it when the notes were given on January 15, 1901. It follows from the absolute dominion which the firm had over its property and its right to make contracts that, both partners consenting, it had the legal right, for sufficient consideration, to assume the payment of the debt of another, and that no one to whom the firm was not then indebted could make any objection. There are, of course, cases in which acts may be fraudulent as against subsequent creditors, but there is nothing in this case tending to such conclusion. Graham v. Railroad Co., supra. Only the creditors of the firm existing on January 15, 1901, can raise the question urged on our attention in this case. The trustee, of course, represents all the creditors and can legally act for them. We have carefully read the record more than once, and we fail to find any proof that there are now any creditors of the firm who were its creditors when the five notes were given. It is true that it now appears that the firm was insolvent at that time. It is also shown that it owed debts at that time to the amount of between $3,900 and $4,000, besides the debts to the bank. This is shown by proof of a statement made by the firm to the bank. The same statement showed the firm's stock of merchandise was worth $18,000; that it had good

notes and accounts collectible by March 1st for about $5,000. This evidence tends to show that the firm was amply able to discharge the debts of about $4,000 before the date of the bankruptcy, which occurred July 15, 1901, six months after the five notes were given for the debt to the bank. It appears that on June 4, 1901, the firm made a general assignment. The general assignment is not in evidence, and no evidence is offered as to any debt, except the bank debt, that was secured by it. And nowhere does the record show the existence of a debt, except those due to the bank, that was owing on January 15, 1901. On the contrary, the testimony of one of the partners, Wright, tends to show that all of the debts, except that to the bank, that were past due January 15, 1901, were paid before the firm became bankrupt, and that the present debts of the firm are the debts to the bank and debts contracted since the making of the five notes. An excerpt from the evidence on this subject will be found in the statement.

If it appeared from the record that the existing debts had been discharged with means secured by incurring the subsequent liabilities, the latter creditors would be subrogated to the rights of the former. Wait on Fraud. Con. § 103. But no such claim or contention is made or proved, and there is no evidence on which to base it.

Each one of the five notes contains an agreement that, "if this note is placed in the hands of an attorney for collection, the makers and indorsers hereof agree to pay the holder of this note an attorney's fee of ten per cent. upon the amount due." An agreement by which the maker of a promissory note or other contract binds himself to pay a reasonable attorney's fee if the contract is not performed according to its terms, and the other party is required to take steps to enforce it, has generally been held just and valid. Machine Co. v. Moreno (C. C.) 7 Fed. 806. It is but a reasonable stipulation for indemnity for expenses which the debtor may himself render necessary. Such contracts are held valid and not against public policy in Mississippi. Meacham v. Pinson, 60 Miss. 217; Eyrich v. Bank, 67 Miss. 60, 6 South. 615. A promissory note providing for the payment of attorney's fees, "if placed in the hands of an attorney for collection," involves exactly the same question, and a note containing a stipulation in that form was held valid in Barton v. Bank, 122 Ill. 352, 13 N. E. 503. A stipulation, however, for a definite amount or percentage as attorney's fees in a note is not conclusive on the parties. A creditor would not be permitted to make a profit to himself by stipulating for a larger sum or percentage than the reasonable attorney's fees he would have to pay. Munter v. Linn, 61 Ala. 492; Williams v. Flowers, 90 Ala. 136, 7 South. 439, 24 Am. St. Rep. 772. When, however, the amount is not obviously excessive, the stipulation as to the amount should govern. Dorsey v. Wolff, 142 Ill. 589, 32 N. E. 495, 18 L. R. A. 428, 34 Am. St. Rep. 99. No evidence was offered as to the value of the attorney's services, except the contract itself.

There is no conflict in the evidence that these notes were placed in the hands of an attorney for collection, and that he has performed services in endeavoring to collect them. For such services the bank

became indebted to the attorney, and the purpose of the stipulation is to indemnify the bank against such expense.

We are of opinion that on the record before us the five notes, including the attorney's fees of 10 per cent., are provable claims against the estate of the bankrupts, and an order permitting them to be so proved must be entered.

The decree of the court of bankruptcy, therefore, must be reversed.