## In re MARTIN.

(District Court, E. D. Texas.  September 19, 1921.  On Motion for Rehearing, December 1, 1921.)

### No. 2154.

1. **Fraudulent conveyances 47—Bulk Sales Law held inapplicable to chattel mortgage.**

The Texas Bulk Sales Law (Vernon's Sayles' Ann. Civ. St. 1914, arts. 3971, 3972) contemplates a transaction passing both title and possession, and does not apply to a chattel mortgage on fixtures, especially as, under another statute, chattel mortgages on goods exposed for sale by the mortgagor are fraudulent.

2. **Chattel mortgages 129—Do not convey title.**

Under the laws of Texas, a chattel mortgage is but security for a debt, and does not convey title; the title remaining in the mortgagor, subject to being divested by foreclosure.

3. **Statutes 181(1)—Matters to be considered in finding intent stated.**

To find the legislative intent in construing a statute, it is proper to consider the entire statute, the ordinary meaning of the words used, the object of the legislation, and the status of the law in relation to the subject-matter under discussion.

### On Motion for Rehearing.

4. **Courts 366(1)—Only construction of statute by highest state court binding.**

It is only the construction of a state statute by the highest court of the state which is final and conclusive in the federal courts, and a decision of the Texas Court of Civil Appeals is not binding.

In Bankruptcy.  In the matter of E. E. Martin, bankrupt.  On review of an order of the referee.  Petition granted, and judgment directed.

ESTES, District Judge.  [1] This case comes to this court for an answer to a question from the referee, certified in response to a petition for review.  The pertinent facts are set forth in the following statement, to which both parties have agreed:

"On the 21st of September, 1920, E. E. Martin executed and delivered to the Tyler Grocery Company a chattel mortgage covering all his fixtures except the soda fountain (a certified copy of the mortgage is attached to said agreed statement of facts), and which mortgage was filed for registration at 9 a. m. September 22, 1920.  Said fixtures were used in Martin's drug store and constituted the fixtures of his business.  Neither Martin nor Tyler Grocery Company notified Martin's creditors of the giving of said mortgage 10 days before same was executed and delivered to said Tyler Grocery Company.  Martin was indebted to Tyler Grocery Company in the amount of $800 for goods, wares, and merchandise sold to said Martin, and said mortgage was given to secure Tyler Grocery Company in payment of said indebtedness and in payment of all other indebtedness the said Martin was then due or might become due to said Tyler Grocery Company, until said mortgage should be marked satisfied.  Subsequent to date of said mortgage Tyler Grocery Company sold said Martin goods, wares, and merchandise of the value of $621.35, and the total claim of Tyler Grocery Company as proven and allowed in this court

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
283 F.—53

is the sum of $1,421.35. The mortgage so given was not to secure the purchase price of said fixtures, but was to secure the Tyler Grocery Company in the amount of E. E. Martin's then indebtedness to it, and such indebtedness as he might thereafter incur to it."

The mortgagor was adjudged a bankrupt on April 1, 1921, and the property included in the mortgage was taken over by the bankruptcy court and sold by the trustee. One of the creditors filed a contest, challenging the priority of the claim of the mortgagee to the proceeds of the sale, upon the proposition that the mortgage on the fixtures comes within the prohibition of the Bulk Sales Law. The referee, in a very lucid and plausible opinion, following the case of Beene v. National Liquor Co. (Tex. Civ. App.) 198 S. W. 596, sustained the contest, and, in connection with the petition for review, has certified the following question:

· "Is the giving of a chattel mortgage by a merchant on fixtures such a transfer as offends the provisions of the Texas Bulk Sales Law, in the absence of the requirements of said law as to giving notice prior to such transfer?"

The Texas statute, commonly termed the Bulk Sales Act, in so far as it is applicable here, is as follows:

"The sale or transfer in bulk of any part or the whole of a stock of merchandise, or merchandise and the fixtures pertaining to the conducting of said business otherwise than in the ordinary course of trade, and in the regular prosecution of the business of the seller or transferor, shall be void as against the creditors of the seller or transferor unless the purchaser or transferee demand and receive from the seller or transferor a written list of names and addresses of the creditors of the seller or transferor, with the amount of the indebtedness due or owing to each and certified by the seller or transferor under oath to be a full, accurate and complete list of his creditors, and of his indebtedness; and unless the purchaser or transferee shall at least ten days before taking possession of such merchandise or merchandise and fixtures, or paying therefor, notify personally or by registered mail every creditor whose name and address are stated in said list, or of which he has knowledge, of the proposed sale and of the price, terms and conditions thereof. Any purchaser or transferee who shall not conform to the provisions of this act shall, upon application of any of the creditors of the seller or transferor, become a receiver and be held accountable to such creditors for all goods, wares, merchandise and fixtures that have come into his possession by virtue of such sale or transfer." Article 3971, Vernon's Ann. Civ. St. Supp. 1918, Texas.

"Any purchaser or transferee who shall conform to the provisions of article 3971 shall not in any way be held accountable to any creditor of the seller or transferor for any of the goods, wares, merchandise or fixtures that have come into the possession of said purchaser or transferee by virtue of such sale or transfer." Article 3972.

[2] At the time this law was enacted, the courts of this state had held that a mortgage does not convey the title to property, and is but a security for the debt. The title remains in the mortgagor, subject to being divested by foreclosure. Wright v. Henderson, 12 Tex. 43; Pratt v. Godwin, 61 Tex. 331. At the time, too, the following statute was and still is in force:

"Every mortgage, deed of trust or other form of lien attempted to be given by the owner of any stock of goods, wares or merchandise daily exposed to sale, in parcels, in the regular course of the business of such merchandise, and contemplating a continuance of the possession of said goods and control of said business, by sale of said goods by said owner, shall be deemed fraudulent and void." Vernon's Sayles' Ann. Civ. St. 1914, art. 3970.

Statutes similar to the Texas Bulk Sales Act, supra, and of almost identical verbiage, have been enacted in several of the states, and the courts, excepting one of the courts of Texas, have construed them not to include mortgages. Farrow v. Farrow, 136 Ark. 140, 206 S. W. 134; Hannah v. Richter Co., 149 Mich. 220, 112 N. W. 713, 12 L. R. A. (N. S.) 178, 119 Am. St. Rep. 674, 12 Ann. Cas. 344; Schwartz v. King Co., 94 N. J. Law, 134, 109 Atl. 567, 9 A. L. R. 471; Noble v. Fort Smith Co., 34 Okl. 662, 127 Pac. 14, 46 L. R. A. (N. S.) 455; Wasserman v. McDonnell, 190 Mass. 326, 76 N. E. 959.

The general rule is stated in one of the standard authorities as follows:

"The terms 'sale,' 'transfer' or 'assignment' used in such act, taken in their usual and ordinary signification, mean the disposition of the entire title of the assets. Such words are held not to be sufficient to include a mortgage made in good faith, or a foreclosure thereunder."

In Texas the question has been considered in only two cases—both decisions by Courts of Civil Appeals, one holding that the mortgage is, and the other practically holding that it is not, prohibited by the law. Beene v. National Co. (Tex. Civ. App.) 198 S. W. 596; Krower v. Martin (Tex. Civ. App.) 184 S. W. 511.

[3] The language of the act itself, when taken in connection with the status of the law at the time the statute was enacted, as well as the reasons or conditions that induced the legislation, tend to show both the purpose and the scope of the statute.

"To find the legislative intent in construing a statute, it is proper for the court to consider the entire statute, the ordinary meaning of the words used, the object of the legislation, and the status of the law in relation to the subject-matter under discussion."

The sale or transfer mentioned in the act obviously contemplates such a transaction as passes both the title and possession of the property, because the requirement is that the sale or transfer shall be made "in the ordinary course of trade, and in the regular prosecution of the business"; that notice "of the *proposed sale*" shall be given "by the purchaser or transferee" 10 days before "*taking possession* of such merchandise and fixtures or *paying therefor*"; and the purchaser or transferee who complies with the provisions respecting notice is relieved of the "responsibility for the goods and fixtures that have *come into the possession* of such purchaser or transferee by virtue of such sale or transfer."

This language, when considered in connection with the statutes that were in force at the time the law was passed—statutes that not only recognize mortgages as such, and to that extent distinguish them from sales and transfers, but that prohibit such instruments to apply to a stock of goods exposed for sale—seems to demonstrate that the Legislature did not intend to prohibit such mortgages as is shown in this case. Not only did the title to the property remain in the mortgagor after this mortgage was executed, but the instrument shows on its face that a transfer of the possession was not intended by the parties.

"It is clear that the statute means a sale by the owner and by him otherwise than in the ordinary course of trade. What it aims at is the sale in bulk of the whole or a large part of the stock or merchandise or fixtures otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business or occupation. It does not mean a sale under a mortgage—a paramount title. If the words 'sale,' 'seller,' 'stock,' 'creditors,' 'course of trade,' left this in doubt, that doubt would be removed by the provisions as to the sale in the regular and usual prosecution of the seller's business, and as to the inquiry by the purchaser of the seller for the names of creditors and the amount of indebtedness. These words would be quite inappropriate, if the sale were a sale on foreclosure of the mortgage, for in connection with the context they would involve the absurdity of holding that a chattel mortgage sale could, under some circumstances, be in the regular and usual prosecution of the mortgagor's business, and that the mortgagee's own sale could, under some circumstances, be void as to himself, since he also is a creditor. Such a sale is not a sale under a superior title, and not within the mischief intended to be remedied." Schwartz v. King, supra.

The purpose and history of the legislation confirms this view. The evils that created a sentiment favorable to laws such as these were widespread and conspicuous. The complaints and discussions on the subject are matters of current history. There was at the time no difficulty, resulting from mortgages on stocks of merchandise, because the statute before quoted prohibits such. But the sale of merchandise in bulk, even though in fraud of creditors, could be accomplished. There was, therefore, no reason to include a mortgage within the prohibitions of the new law. There was no evil to be corrected from the use of such instruments.

What was undertaken, and what was in fact done, was to prevent a stock of merchandise from being transferred in bulk, and both the stock and the proceeds being put, by such procedure, beyond the reach of creditors. The act does not purport to prohibit even the sale in bulk of the fixtures; but, assuming good faith in the transaction, it prohibits only the sale of merchandise and fixtures together. The mischief sought to be remedied is reached by such an interpretation of the statute as is given to it under the rule before quoted, by practically all of the authorities, and by such construction a valuable right incident to the ownership of property is not violated.

It is not for the courts to stretch by construction the application of statutes, so as to include transactions that the Legislature did not intend to prohibit, particularly if such construction would interfere with a recognized property right. If conditions exist that call for remedy, a matter for the consideration of the legislative branch of the government is then presented. It is believed that the great weight of authority on this point should govern, and the question as certified is answered in the negative.

It is therefore ordered that this petition be granted, and that judgment be entered by the referee in accordance with this opinion.

### On Motion for Rehearing.

[4] Since the rendition of the judgment in this case, counsel for petitioners have filed a very able and interesting argument in support of a motion for a rehearing or further review of the questions involved, and it has been examined by the court with much care. The

point is made that the construction of the statute by the Court of Civil Appeals in the Case of Beene, 198 S. W. 596, is binding upon this court, and the case of Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 565, 35 L. Ed. 171, and others are cited to sustain the contention.

The doctrine that the construction placed upon a state statute by the highest court of the state is accepted and recognized by the courts of the United States in cases where state statutes are involved is well established. But the construction thus followed must be from the highest court of the state; otherwise, the finality and conclusiveness which constitutes the very essence of the doctrine would be lacking. Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 Sup. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160.

In this case the only Texas decisions bearing upon the questions involved are from the Courts of Civil Appeals. The Supreme Court has never construed the statute. While any expression from a Court of Civil Appeals, and particularly from Judge Hodges, is persuasive and entitled to the utmost consideration, it does not come within the category of decisions that are followed by other courts as a final and authoritative construction of a statute. This is manifest when one considers that the Courts of Civil Appeals in Texas frequently differ about questions that have to do with the substantive law or the construction of the statutes of the state. Until the Supreme Court shall have rendered a decision, the question is necessarily unsettled.

In the present status of the decisions, a construction must be put upon the statute that to this court seems sound, and to reflect the intent of the Legislature. Such a construction was set forth in the original opinion filed herein, and the motion for a rehearing is therefore overruled. All proper exceptions are reserved to this ruling.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes