### In re GRIFFEN DRUG CO.

(District Court, N. D. Texas, at Dallas.  May 2, 1923.)

#### No. 1574.

1. **Bankruptcy** ⟲⟹316(2)—**Attorney's fees provided for in notes held allowable as part of claim.**

Under the law of Texas, by which attorney's fees, when due under the terms of a contract, become a part of the contract debt, where notes of a bankrupt provided for attorney's fees in case the notes were placed in the hands of attorneys for collection, and they were so placed before the filing of the petition, the stipulated fees are allowable as part of the debt on the notes, though the attorneys took no action until after filing of the petition.

2. **Fraudulent conveyances** ⟲⟹47—**Texas Bulk Sales Act does not apply to chattel mortgages.**

Texas Bulk Sales Law, as amended by Acts 1915, c. 114, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 3971), prohibiting the sale in bulk of a stock of merchandise, or merchandise and fixtures, except under conditions therein named, does not apply to a chattel mortgage on fixtures.

⟲⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Bankruptcy. In the matter of the Griffen Drug Company, bankrupt. On review of orders of referee. Affirmed.

Nathan Patten and J. W. Cocke, both of Waco, Tex., for trustee.
Callicutt & Johnson, of Corsicana, Tex., for State Nat. Bank.

MEEK, District Judge. In the course of the above bankruptcy proceeding an order was entered by the referee after full hearing, and, one of the creditors feeling aggrieved at the conclusions reached and given effect by the order, the trustee of the estate was granted this petition for a review. The facts are not in dispute and are given by the referee as follows:

State National Bank of Corsicana proved its claim against the estate of the bankrupt herein in the sum of $20,679.30, together with interest thereon from February 27, 1922, at the rate of 10 per cent. per annum and costs of suit, alleging the consideration for this debt was money loaned by it to the bankrupt and that the indebtedness had been reduced to judgment in the district court of Navarro county, Tex., a copy of this judgment being introduced in evidence. The suit was filed after the bankruptcy petition was filed, and the judgment was rendered a few days before the adjudication in bankruptcy. It was agreed in court that the fixtures in bankrupt's place of business were worth $12,000, and the bank, which claimed a lien on these fixtures, agreed to waive its lien for its claim in addition to that sum. The fixtures upon sale brought more than $12,000, but because of said waiver the bank and all other creditors agreed that the lien of the bank should be referred to the sum of $12,000, and that the balance of the bank's claim should be allowed as an unsecured claim.

[1] Two questions of law are presented on this review. The first discussed and decided relates to an attorney's fee and is as follows:

(1) "Whether attorney's fees can be allowed to attorneys when the notes forming the basis of the claim of the bank were placed in the hands of attorneys for collection before bankruptcy, but where the attorneys had taken no action to collect the notes before bankruptcy intervened."

The contesting creditor contends that attorney's fees should not be allowed on this claim of the bank. The proof of claim asserts that attorney's fees are included in the claim and that:

"The notes were placed with attorneys for collection before the petition in bankruptcy was filed. The testimony of the attorneys is to the effect that, although the notes were placed in their hands for collection prior to bankruptcy, no action was taken before bankruptcy, and no demand was made on the bankrupt before bankruptcy; but the understanding was that the attorneys were going to collect the attorney's fees provided in the face of the notes, and that they expected to be paid that amount."

There is no question made here that the bank's attorneys have not earned the 10 per cent. attorney's fees provided in the notes. The question raised is this: The notes having been placed in the hands of attorneys for collection before the institution of these proceedings, but no services of any character having been rendered by them until after the filing of the petition in bankruptcy, whether the court should allow them the compensation claimed for the work done by them, and,

if so, why? In the face of these notes is the provision for attorney's fees as follows:

"Ten per cent. additional on amount of principal and interest unpaid for attorney's fees, if placed in the hands of an attorney for collection."

If these promissory notes were not paid upon their maturity, and the bank placed them in the hands of their attorneys for collection, then and there by the provisions of the notes the makers of the notes became liable for the attorney's fees. These two contingencies had occurred, and therefore the liability of the makers of these notes for these attorney's fees was fixed prior to the institution of the bankruptcy proceedings. The commencement of these proceedings does not alter or change the liability of the bankrupt for the 10 per cent. attorney's fees.

It is well settled in this state that a stipulation for attorney's fees on the happening of the contingency provided for in the obligation becomes a part of the demand definite, certain, and fixed by the terms of the contract. This doctrine has been frequently recognized by the decisions of the courts. Merchants' Bank of Grenada v. Thomas, 121 Fed. 306, 57 C. C. A. 374; In re Edens Co. (D. C.) 151 Fed. 940; Stansell & Younger v. Cleveland, 64 Tex. 660; Simmons v. Terrell, 75 Tex. 275, 12 S. W. 854; Maddox et al. v. Craig, 80 Tex. 600, 16 S. W. 328; Martin Brown Co. v. Perrill, 77 Tex. 199, 13 S. W. 975; In re Keeton, Stell & Co. (D. C.) 126 Fed. 429.

In view of the fact these attorneys have been called upon actively to represent the bank in ascertaining whether their clients' claim should come to fruition here as a claim protected in large part by a lien or as an unsecured claim, there is no question as to the reasonableness of the ten per cent. on principal and interest due and unpaid upon these notes. This attorney's fee is included in the claim of their client, the bank, as filed, and was also included in the judgment secured in the district court of Navarro county. Their right to this attorney's fee is fixed by contract, and is in my opinion a just and appropriate charge against the estate of this bankrupt and is allowed them.

[2] The second question of law discussed and decided relates to the proper construction of the Bulk Sales Law of Texas as amended, and is as follows: (2) Whether a mortgage on fixtures used in the store of a going concern where merchandise is daily exposed for sale is null and void as to the creditors of the bankrupt, because it is a mortgage given upon a stock of goods, wares, merchandise, and fixtures pertaining to the business of the bankrupt, without any compliance with the terms of the Bulk Sales Law of Texas; it being contended by the trustee that such chattel mortgage is a sale or transfer within the intent and meaning of the language used in such statute, which is as follows:

"*Sales of Merchandise and Fixtures in Bulk; Notice to Creditors; Liability as Receiver.*—The sale or transfer in bulk of any part or the whole of a stock of merchandise, or merchandise and the fixtures pertaining to the conducting of said business otherwise than in the ordinary course of trade, and in the regular prosecution of the business of the seller or transferor, shall be void as against the creditors of the seller or transferor unless the purchaser or trans-

feree demand and receive from the seller or transferor a written list of names and addresses of the creditors of the seller or transferor, with the amount of the indebtedness due or owing to each and certified by the seller or transferor under oath to be a full, accurate and complete list of his creditors, and of his indebtedness; and unless the purchaser or transferee shall at least ten days before taking possession of such merchandise or merchandise and fixtures, or paying therefor, notify personally or by registered mail every creditor whose name and address are stated in said list, or of which he has knowledge, of the proposed sale and of the price, terms and conditions thereof. Any purchaser or transferee who shall not 'conform to the provisions of this Act shall, upon application of any of the creditors of the seller or transferor, become a receiver and be held accountable to such creditors for all goods, wares, merchandise and fixtures that have come into his possession by virtue of such sale or transfer." Vernon's Sayles' Civil Statutes of the State of Texas, art. 3971, as amended (Vernon's Ann. Civ. St. Supp. 1918, art. 3971).

The basis for the contention of the trustee in this matter so far as any judicial opinion supports him in his contention that the chattel mortgage in this case is a sale or transfer of these fixtures within the intent and meaning of the language used in this statute is a decision rendered by the Court of Civil Appeals of Texas in the case of Beene v. National Liquor Co., 198 S. W. 596. Subsequent to the time of the decision handed down in that case it is most helpful to me to have before me the construction of the Bulk Sales Law and the identical question which was decided by the Court of Civil Appeals in the above case discussed and construed by judges of the United States District Court sitting in the Southern and Eastern Districts of Texas. Judge Hutcheson has construed this act and has written clearly and convincingly upon the subject. In the course of his opinion he writes:

"The statute has employed plain and everyday language to express a thought not complex, but simple, that it shall be contrary to law for a sale or transfer in bulk of any part or the whole of the stock of merchandise, or merchandise and fixtures, to be made, except under the conditions named in the statute. The statute has not denounced a sale or transfer of fixtures apart from the merchandise, and the court has no authority to read into the statute a prohibition which the Legislature did not place there. Nor, if the spirit and purpose of the Legislature be searched, is it at all clear that the Legislature intended to bring within the Bulk Sales Act, which was designed to reach fraudulent sales of stocks of merchandise, a sale or transfer of fixtures alone, where the merchandise was not involved. To my mind, the evident purpose of the amendment was, where a sale of merchandise in bulk occurred, to make the purchaser take the fixtures, if they were included in the sale, in the same case as he took the merchandise. * * * Looking, then, to the evil to be remedied, we find no occasion for the prohibition of a mortgage, and no ground for holding that the Legislature which had on its statutes an act covering in express terms the mortgage of a stock of goods, intended by words which have to do with the passage of title and possession, to inhibit a security transaction; but, as I have before taken occasion to state, it is never a safe guide, until all other guides have failed, to rest a decision as to the meaning of a statute upon a supposition as to what the Legislature had in mind, if they failed to express in the language employed. The duty of a court is only to find how the law has been written, and not to declare how it ought to be, and, when the Bulk Sales Act is examined in its completeness, it will be found to contain provisions as to what the intended purchaser is expected to do before he can effect his purpose, which cannot be reconciled with the theory that the statute is talking about a mortgage, since it expressly provides that a purchaser, before he takes a transfer, must write each of the creditors, advising them the price and terms of the sale. It is doing judicial violence, not only to the legislative intent, but to the

plain, common-sense meaning of the language, to distort a statute which makes such requirements as the Bulk Sales Act does, so as to make it cover an ordinary mortgage taken for security." In re Gary (D. C.) 281 Fed. 218.

Judge Estes has written in Re Martin (D. C.) 283 Fed. 833, in construction of this same statute as amended. He reviews the Texas statute law on the subject of bulk sales and also the statutes relating to chattel mortgages. The observations of Judge Estes tend to make plain the reasons of the Legislature in passing and later amending the Bulk Sales Law as it did. His construction of this statute is in my opinion correct. His observations and suggestions made upon the subject of statutory construction are apt and timely, in view of the construction placed by the Court of Civil Appeals on this statute in the opinion in the case of Beene v. National Liquor Co. Judge Estes says in part:

"The language of the act itself, when taken in connection with the status of the law at the time the statute was enacted, as well as the reasons or conditions that induced the legislation, tend to show both the purpose and the scope of the statute. 'To find the legislative intent in construing a statute, it is proper for the court to consider the entire statute, the ordinary meaning of the words used, the object of the legislation, and the status of the law in relation to the subject-matter under discussion.' The sale or transfer mentioned in the act obviously contemplates such a transaction as passes both the title and possession of the property, because the requirement is that the sale or transfer shall be made 'in the ordinary course of trade, and in the regular prosecution of the business'; that notice 'of the proposed sale' shall be given 'by the purchaser or transferee' 10 days before 'taking possession of such merchandise and fixtures or paying therefor'; and the purchaser or transferee who complies with the provisions respecting notice is relieved of the 'responsibility for the goods and fixtures that have come into the possession of such purchaser or transferee by virtue of such sale or transfer.' This language, when considered in connection with the statutes that were in force at the time the law was passed—statutes that not only recognize mortgages as such, and to that extent distinguish them from sales and transfers, but that prohibit such instruments to apply to a stock of goods exposed for sale—seems to demonstrate that the Legislature did not intend to prohibit such mortgages as is shown in this case. Not only did the title to the property remain in the mortgagor after this mortgage was executed, but the instrument shows on its face that a transfer of the possession was not intended by the parties."

Judge Hutcheson and Judge Estes, both in full and learned opinions, reach the conclusion that the holding and construction of the Bulk Sales Law by the Court of Civil Appeals in the case of Beene v. National Liquor Co. is not correct, but wrong, and I fully agree with them in their construction of this statute, and in view of their opinions I feel it is not necessary for me to write further upon this subject. I am convinced the conclusions reached and stated by these judges in their opinions are correct.

The only controversy here, as stated above, is as to the proper construction of the Bulk Sales Law of Texas, and whether that statute applies to the facts which are set forth in this record by agreement. I am of opinion the Bulk Sales Law has no application in this case. The chattel mortgage upon these fixtures in the Griffen Drug place is valid, and the bank is entitled to a decree for the $12,000 fund, representing the value of these fixtures and also to have its 10 per cent. attorney's fees allowed it as was held by the referee.