## Case No. 13,886.

In re THOMAS et al.

[8 Biss. 139;[1] 17 N. B. R. 54; 6 Cent. Law J. 151.]

District Court, E. D Wisconsin. Jan. 28. 1878.

BANKRUPTCY — FIRM LIABILITY — INDIVIDUAL SECURITY — PROOF OF DEBT.

1. Though a note is signed by the members of a firm, with their individual names, yet, if the consideration when received is treated as copartnership funds, the note is a firm liability.

[Cited in Ex parte First Nat. Bank. 70 Me. 380; Colwell v. Weybosset Nat. Bank, 16 R. I. 290, 15 Atl. 80, and 17 Atl. 913.]

2. In a proceeding in bankruptcy, a creditor of the firm, holding security upon the separate property of one of the partners, may prove his entire claim against the joint estate without releasing his security, though the member whose individual estate constitutes the security, owes no individual debt.

3. Discussion of cases.

In bankruptcy. In April, 1875, George L. Thomas and Byron G. Sivyer, the bankrupts, formed a copartnership for the purpose of carrying on a livery and boarding stable business, under the name and style of Thomas & Sivyer. The copartnership relation began about the 8th or 9th of April, 1875, although the active conduct of the business did not commence until some days later. Previously Sivyer and one White had, as copartners, carried on the same business, and by arrangement, the bankrupts purchased White's interest, agreeing to pay him therefor a certain sum of money in cash, and to assume and pay his share of the liabilities of the original firm. To enable them to carry out this arrangement, the bankrupts negotiated a loan of five thousand five hundred dollars from a corporation known as. "The Trustees of Nashotah House." This loan was consummated on the 15th day of April, 1875, and on that day the bankrupts executed to Nashotah House, their joint note for the sum borrowed, signing the note in their individual names. On the same day they received from the agent of Nashotah House a check for the money, running to them in their firm name, and at the same time the bankrupts, in their firm name, gave to White a check upon their bankers for one thousand nine hundred and sixty dollars, the amount agreed to be paid to him in cash upon their purchase of his interest. The remainder of the money so borrowed appears to have been treated and used by them as copartnership funds. The active prosecution of the copartnership business began on the day these transactions took place. Concurrently with the making of the loan of five thousand five hundred dollars, and as security for the repayment thereof, the bankrupts procured to be executed to Nashotah House a mortgage upon real estate. which mortgage was executed by Dorothy Sivyer, wife of Joseph Sivyer, deceased, E. H. Sivyer and wife, Annie J. Sivyer. Byron G. Sivyer, one of the bankrupts, and Julia N. Sivyer Thomas. wife of Geo. L. Thomas, the other of said bankrupts, and by said Thomas. The lands so mortgaged were the property of the heirs of Joseph Sivyer, deceased. each owning an undivided quarter interest, subject to a life interest held by the widow Dorothy Sivyer, the widow and heirs thus joining in the mortgage, and Byron G. Sivyer, one of the bankrupts, and Mrs. Thomas, wife of the other bankrupt, being two of the heirs. This mortgage has been ever since held by the Nashotah House. Sivyer and Thomas carried on their copartnership business until October 8, 1877, when they filed a voluntary petition in bankruptcy, and were adjudicated bankrupts as copartners and as individuals. Their schedules disclosed part

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

nership liabilities and assets, and also individual liabilities of Thomas, but did not show any individual liabilities of Sivyer. The interest of Sivyer in the real estate mortgaged to Nashotah House was scheduled as individual assets. At a meeting of creditors for the choice of an assignee, the Nashotah House was permitted by the register to prove its claim as a demand against the partnership or joint estate of Thomas & Sivyer, without surrender of the mortgage security, and to participate as could an unsecured creditor of the firm, in the election of the assignee. Objection being made by other creditors to this ruling of the register, the case was certified for the opinion of the court.

Orton & Frankenburger and D. S. Ordway, in support of proof of debt.

Howard & Wall and F. C. Winkler, for opposing creditors.

DYER, District Judge. Two questions are presented: First, Is the debt owing to Nashotah House a partnership liability, for the payment of which, the creditors may look to the joint estate of the bankrupts? Second, If it is a partnership debt, can it be proved against the joint fund without surrender of the mortgage security? The first question must, in my opinion, be answered in the affirmative. It is true that the note held by the Nashotah House was signed by the bankrupts in their individual names. But this circumstance is not controlling upon the real character of the liability. "The form of negotiable paper is at most the slightest prima facie evidence of the true character and relations of the parties whose names appear upon it. The members of a firm may appear either upon the face or back of the paper, in their individual names or in the name of the firm. If the paper is made or signed in any manner in the course of the business of the firm, it is partnership paper." Richardson v. Huggins, 23 N. H. 122. The evidence shows that at the time of the five thousand five hundred dollar loan, the copartnership relation existed between Thomas and Sivyer. The money when received was regarded and treated as a copartnership fund. It was dealt with by the parties as a fund employed in their joint enterprise. In the proof of debt made by the Nashotah House, it is stated that it was represented by the parties, when they made the loan, that the money was to be expended in purchasing partnership stock, and other joint uses; that they desired and offered to sign the note in their firm name, but at the request of the creditor they subscribed it with their individual names. "A note signed by each of the members of a firm individually, the consideration of which went into their company business, and given instead of one signed with the partnership name, because the payee so preferred, held to be a partnership note." Kendrick v. Tarbell, 27 Vt. 512. The true test is, was this money borrowed by these

parties as copartners, and for the benefit of the firm, and was it so used. Of course, this question is not to be decided upon statements contained in the proof of debt which is tendered; and looking into the evidence and into the circumstances of the transaction, I am satisfied that the demand in question is the firm debt of Thomas & Sivyer. Entries on their books have been pointed out as tending to a different conclusion, but I do not see that they bear as materially upon this question, as they may upon other questions touched upon in the argument, but not now directly presented for adjudication.

Mr. T. Parsons in his work on Partnership (page 215) says: "If a partnership be contemplated and agreed upon, and a purchase is made, or a debt otherwise incurred by one of the partners for the partnership, but before the actual formation of the partnership, it is only the debt of that partner." This proposition was cited by counsel, in combating the claim that the demand held by the Nashotah House is a firm liability. But upon the facts of this case, that proposition is inapplicable, because it has reference only to the case of a debt incurred by one of the partners before the existence of the copartnership.

Conceding that the demand held by Nashotah House is the firm liability of Thomas & Sivyer, the more serious question remains, can the creditor be permitted to prove against the joint estate, without giving up its mortgage security to the extent that it covers the interest of Byron G. Sivyer, one of the bankrupts, in the lands mortgaged? The question is an interesting one, and was very forcibly discussed by counsel, both in oral argument and in written briefs since submitted.

Counsel for creditors who oppose the proof of debt, contend that the case is not like that of the creditor of a firm who holds as security the collateral liability of a third party, which he may hold and still prove his debt, as if unsecured, against the joint estate, but that here the security, to the extent of the bankrupt Sivyer's interest in the land mortgaged, belongs in fact to the estate against which the debt is proven; that the interest of Sivyer in the mortgaged land is part of the estate for the payment of the partnership debts, especially as his individual schedules do not show that he owes individual debts; hence, that the creditor cannot prove against the joint estate without surrendering his security. Counsel were also understood to deny the general proposition that a joint creditor having security upon the individual estate of one of the members of a firm, is entitled to prove against the joint estate without giving up his security.

The bankrupt law provides (Rev. St. § 5075) that when a creditor has a mortgage upon the property of the bankrupt, he shall be admitted as a creditor only for the balance of the debt after deducting the value of such property to be ascertained by agreement or sale; that the creditor may release his claim upon such property and be admitted to prove his whole debt;

and if the property is not so sold or released, the creditor shall not be allowed to prove any part of his debt. It is to be observed that the security here spoken of is such as is upon the property of the bankrupt, and as it is the firm that is the bankrupt where the proceedings are against a copartnership, there is certainly some reason for construing this statute upon its bare language and independently of other considerations, as meaning that the creditor who must give up his security in order to prove his debt, must be one who has a lien upon the property of the firm; i. e., the bankrupt. And this, too, notwithstanding the fact that, as an incident to the adjudication of the firm, the individual members are also adjudicated bankrupts.

Giving due consideration, as we should, to the object of this statute, it is plain that its purpose was to place the creditors of a bankrupt upon an equal footing in the proof of claims against the fund or estate chargeable in equity with the payment of such claims. So manifestly unjust would it be to unsecured creditors to allow a creditor holding a lien upon property, to which, in the absence of such lien, all creditors might, according to established principles of equity, equally resort, to prove his entire debt, and at the same time hold his security, that the law was so framed as to forbid it.

The distinction, however, between joint and individual estates is in no manner affected. That distinction is inherent, must be always maintained, and is fully recognized in its application to partnerships, by the bankrupt law itself. Rev. St. § 5121.

It is settled, that where the property of a third person is pledged to secure the bankrupt's debt, the creditor holding such security may, without relinquishing it, prove his whole debt. In such case the security does not diminish the estate to which creditors must look, and, moreover, the court would have no authority over property constituting the security and held by a stranger to the bankruptcy proceedings. The case, in event of such security, would not be within the statutory provision.

The question then recurs, in view of the statute, its terms and object, and the established, inherent distinction between joint and separate estates, may the creditor of a firm, holding security upon the separate property of one of the partners, prove against the joint estate without releasing his security? The strength of the argument against it in the case at bar seems to lie in the claim that the bankrupt, Sivyer, whose individual estate constitutes the security, owes no individual debts, and that, therefore, that estate is chargeable with the partnership debts equally with the joint estate— a claim which will be considered after first noticing such authorities as can be found bearing upon the general proposition.

The Case of Plummer, 1 Phil. Ch. 56, was referred to, on the argument. In that case the creditor of a firm took from the firm, security for the payment of certain indebtedness. He also received from the debtors joint and several covenants in writing to pay his demands. The question was whether he was entitled to prove his whole debt against their separate estates and hold his security upon their joint estate. The lord chancellor held that he could. Here was one case of a separate creditor having a security upon the joint estate, seeking to prove against the separate estate without surrendering his security. The lord chancellor, in his opinion, says that: "In administracion under bankruptcy, the joint estate and separate estate are considered as distinct estates; and accordingly it has been held that a joint creditor having a security upon the separate estate is entitled to prove against the joint estate without giving up his security, on the ground that it is a different estate." And he holds one case the converse of the other, and that the same principle applies to both.

In Ex parte Peacock, 2 Glyn & J. 27, which was a case decided first by Sir J. Leach, and afterwards by Lord Eldon, a joint creditor who held security from one of the joint debtors was allowed to prove his debt against the joint estate without a sale or surrender of his security, and this case is cited as authority in Re Plummer

In Ex parte Parr, 18 Ves. 65, the facts were that a house in Demerara drew upon another house in Liverpool, and the draft was accepted by the latter house. The Demerara house, at the time of drawing the draft, gave to the creditor other security. The house at Liverpool was partner with the Demerara firm. The acceptors became bankrupt, and it was held that the creditor could prove his debt against them, without deducting the value of his security, on the ground that, although the two houses were partners, the drawers and acceptors still constituted different firms.

In the Case of Howard [Case No. 6,750], the court, in speaking of the thirty-sixth section of the bankrupt act [of 1867 (14 Stat. 534)], and upon the distinction between joint and separate estates, makes this statement: "It has, therefore, been held that a joint creditor, having a security upon the separate estate, is entitled to prove against the joint estate without giving up his security." Counsel in argument claim that this language, in the opinion of the court, is altogether obiter, and perhaps it was an observation not essential to a decision of the question under consideration in that case. But it is stated as a proposition from which is deduced a principle influencing the conclusion of the court on the question before it, which was one relating to the proof of a claim against both joint and separate estates.

In Ex parte Whiting [Case No. 17,573], Judge Lowell observes that: "When one

partner has pledged his shares for the debt of the firm, proof may be made in full against the assets of the firm, because it is only when the proof is against the same estate which furnished a security, that a sale and application of the security is required by the bankrupt law."

In Re Holbrook [Case No. 6,588], the bankrupts were the firm of F. F. Holbrook & Co., and the property assigned as security was owned by Holbrook alone. Judge Lowell says: "The statute only requires the property to be renounced, sold or valued when it is the property of the bankrupt. If the goods or estate of any third person have been pledged for the bankrupt's debt, equity does not require that the general creditors of the bankrupt should have the advantage of this security; on the contrary, the equity is, that the estate of the volunteer should be exonerated, * * * whether the creditor had security by indorsements, or in any other way that has not diminished the general assets, he has a right to prove it. * * * This rule applies to partnerships when the estate of one partner has been pledged or mortgaged for a debt of the firm, and for the same reason, that the full proof should be made against that estate which is the principal debtor" (citing Story, Partn. § 389; Ex parte Parr, 1 Rose, 76; Ex parte Plummer, 1 Phil. Ch. 56; Wilder v. Keeler, 3 Paige, 167; Besley v. Lawrence, 11 Paige, 581; Ex parte Peacock, 2 Glyn & J. 27.) In the case of Wilder v. Keeler, supra, the chancellor says: "A creditor of the joint estate is always entitled to whatever he can obtain out of that fund in the hands of a surviving partner without relinquishing his security against the separate estate of the deceased partner."

These are the cases bearing upon this question which have come to the attention of the court, and it is claimed that so far as they touch the precise point under consideration they are little more than dicta. It is true that they do not discuss the question, but rather assume the proposition to be settled. Nevertheless, I think they are not to be disregarded as wanting in application to the present case or in authoritative character, as insisted by counsel.

Looking at the question in the light of principle, we encounter at once the distinction between joint and separate estates, which the law recognizes, and which, as has been remarked, is inherent. The primary fund for the payment of partnership debts is the joint estate. It is true, that after exhausting that estate, ultimate recourse may be had upon the separate estate for the payment of partnership debts if such separate estate is not absorbed by individual debts. But this possible result does not rub out the line of separation between joint and separate estates, which the law has established and which makes them, in fact, different estates.

It is contended that as the schedules of the bankrupt Sivyer do not show individual debts, his individual interest in the lands mortgaged must of necessity fall into the joint estate as part of the fund for the payment of joint liabilities. Undoubtedly, these schedules may be resorted to as evidence that Sivyer does not owe individual debts; but they are not to be regarded as conclusive evidence. And the question is, even if it be true that he has no individual liabilities, so that as an ultimate result, partnership creditors may, if need be, have recourse to his separate estate, can or ought that circumstance to affect the application of the recognized distinction between joint and separate estates? In other words, does the enforcement of that distinction depend only upon a state of case involving a marshaling of assets because of the existence of joint and individual liabilities, or is it a distinction which must have recognition ex necessitate, even though, ultimately, the joint creditor may have a right to pursue the separate estate? As I have said, the primary estate for the payment of the joint liabilities of Thomas & Sivyer is the partnership fund. That is the estate against which partnership debts are proven. Even in the absence of individual debts, each of the partners has an equitable right to insist that the primary fund be exhausted before coming upon their separate estates for the payment of firm debts. In view of the consideration thus suggested, I think it is not accurate to say that the interest of the bankrupt Sivyer in the land mortgaged, belongs to, or is part of, the estate against which partnership debts are proven, though it should be that ultimately partnership creditors might reach it.

The ground upon which the lord chancellor, in the Case of Plummer, supra, rests the proposition that a joint creditor may prove against the joint estate without relinquishing his security upon the separate estates is, that the two estates are different. And in Re Holbrook, supra, Judge Lowell, speaking of partnership and partnership liabilities, refers to the joint estate as the principal debtor, and as, therefore, the estate against which the debt is proven.

Then, if the joint estate is the primary fund for the payment of the partnership debts, can it be said that any other than that estate is the one against which the claim in question is proved, and can it be said that this creditor has security upon that joint estate? I think not.

There is a class of cases in which it has been held that where a creditor holds notes signed by a firm, and signed or indorsed also by an individual member of the firm, he may prove against both estates, and receive dividends from both. In re Farnum [Case No. 4,674]; Mead v. National Bank of Fayetteville [Id. 9,366]; Emery v. Canal Nat. Bank [Id. 4,446]. These cases establish a

rule opposed to the old rule on the subject in England, and the principle thus settled seems to reach out to the question involved in the case at bar. The scope of these decisions is, that when an individual member of a firm, as such, becomes surety upon or indorses an obligation of the firm, he thereby gives what is in the nature of security upon his separate estate to the firm creditor; and by reason of the individual liability, superadded to the joint obligation, he places the firm creditor in a position where he can go against the individual as well as the joint estate.

Thus it results, that without the indorsement or individual signature of one of the firm, the firm creditor would have no right to claim against the individual assets until individual creditors had been first satisfied. But holding the individual indorsement or signature, the firm creditor may, in the first instance, prove against the separate as well as the joint estate.

Now, such separate liability would seem to be, at least, in the nature of security, though differing radically, it is true, in character and form from that of a mortgage, and yet double proof by the firm creditor in such case may be made without any abatement of advantage which his diligence has secured. The principle which sanctions such a rule seems to lend support to the view taken of the question involved in the case at bar, and on the whole, my opinion is that the Nashotah House has a right, as a creditor of the firm of Thomas & Sivyer, to prove its debt against the joint estate without valuation or surrender of its security upon the separate property of Sivyer, and may, therefore, participate in the election of an assignee with other firm creditors.