Theodore Dumanoise v. Thomas Townsend and Rufus Worden.

*Partnership—Co-principals—Liability to third parties.*

In a proceeding to charge one person with a liability in conjunction with another, the issue is not necessarily upon the existence of a partnership between them, but upon the performance of an act to which the law attaches a joint obligation.

So *held*, where A. and B. agreed to purchase logs, have them hauled to a mill, and manufactured into lumber. B. was to do the buying and attend to the business, and A. was to advance the money. They examined the timber jointly, and in some instances both negotiated for its purchase. B. referred purchasers to A., who paid for most of the logs directly to the vendors. He also paid some parties for hauling, and he paid for the sawing of the logs. A. was to have a claim on the lumber as security for the money advanced, but took no chattel mortgage, and was to reimburse himself out of the proceeds of the lumber. B. hired plaintiff to haul logs, and also to load the lumber on a car for shipment; and it is held that A. and B. were co-principals in both transactions, and as such liable to pay plaintiff the balance his due.

Error to Genesee.   (Newton, J.)   Argued April 15 and 16, 1890.   Decided April 25, 1890.

*Assumpsit.*   Plaintiff   brings   error.   Reversed.   The facts are stated in the opinion.

*R. C. Johnson* and *Durand & Carton,* for appellant, contended for the doctrine stated in the opinion.

*George E. Taylor* and *Geer & Williams,* for defendants, contended.

1. The same rule should apply in establishing a partnership as would be required to establish an agency, in which case it is incumbent upon a person dealing with another assuming to act for an individual, firm, or corporation to ascertain what his authority is, and his own statement of his authority is not sufficient to establish such agency; citing *Kornemann v. Monaghan,* 24 Mich. 37; *Sewing Machine Co. v. Polhemus,* 34 Id. 249; *Rice v. Peninsular Club,* 52 Id. 90; *Heishfield v. Waldron,* 54 Id. 651; *Bond v. Railroad Co.,* 62 Id. 643.

5. In support of the claim that the promise, if made, was within the statute of frauds, counsel cited *Waldo v. Simonson,* 18 Mich. 345; *Stewart v. Jerome,* 71 Id. 201; *Bresler v. Pendell,* 12 Id. 224; *Corkins v. Collins,* 16 Id. 478; *Welch v. Marvin,* 36 Id. 59; *Pratt v. Bates,* 40 Id. 37; *Preston v. Young,* 46 Id. 103; *In re Tozer Estate,* Id. 299; *Baker v. Ingersoll,* 39 Id. 158; *Gower v. Stuart,* 40 Id. 747.

CHAMPLIN, C. J.   This action was brought to recover a balance claimed by plaintiff to be due to him from defendants for hauling black-walnut logs, and loading black-walnut lumber upon a car.   The plaintiff claimed a joint liability on the part of defendants.   Townsend defended, denying all liability.

The plaintiff introduced testimony which tended to show that defendants were partners in the purchase of certain black-walnut logs of different farmers in the vicinity of Davison, a station on the Chicago & Grand Trunk Railway, where a saw-mill was located, and in the manufacture of such logs into lumber, and the sale there-

of; and he claims that their relations were such, in car-rying forward the business, that they were partners, and jointly liable to him for the labor performed.

Plaintiff showed that defendants went in company with each other to different farmers, and bargained for black-walnut trees and logs, and for cutting and hauling them to the mill, and that Worden went alone to a farmer by the name of Long, and represented that he and Townsend where in partnership in purchasing black-walnut, and that Townsend would pay him therefor, and that Long went to Townsend, and told what representations Worden had made, and he said it was all right, and afterwards paid him for the logs, and for hauling them to the mill; that Worden was irresponsible, and known to be so by those from whom the timber was purchased; that Worden engaged plaintiff to haul black-walnut logs to the mill which had been purchased of farmers. He told him that Townsend would see that he got his pay for it. Before he had finished hauling, there being but four or five loads more to haul, he requested two of his teamsters who were hauling logs for him to see Townsend person-ally, and ascertain if he was responsible for his pay. They did see Townsend, and asked him if he was to be responsible for the pay for hauling the logs; and he said he was, for every dollar. They reported this conversation to plaintiff, and he went on, and completed the hauling of the logs.

Plaintiff also showed that Worden engaged him to load the lumber sawed from the logs upon a car for shipment; that Worden and Townsend were both present at the time he was engaged in loading, and Townsend kept talley of the lumber, and, after it was loaded, plaintiff told Town-send and Worden, as he testifies, that he wanted pay for his work, and they said they would like to have him wait until they got their returns from the lumber, and he

refused, because there was a difference in their accounts, and then was the time to settle, and, if they did not, he would stop the lumber there; that they then looked over his account, and concluded it was correct. He told them he must have $15 to send to his wife in New York, and Townsend said he should have it, if he would wait for the rest until they got their returns for the lumber. He assented to this, and received the $15. He also showed that Townsend paid for sawing the logs into lumber, and that it was shipped to Detroit in his name for sale, and that he received the money for which the lumber was sold.

The testimony introduced on the part of the plaintiff was ample to warrant the jury in finding that defendants were jointly interested as partners in the transaction of dealing in black-walnut lumber from the purchase of the logs to the manufacture and sale of the lumber, and were liable as such for hauling the logs to the mill, and loading the same upon the cars.

At the close of the plaintiff's testimony the defendants' attorney moved the court to direct the jury to render a verdict for the defendants, which motion the court correctly refused.

The only witness produced and examined on the part of the defendants was defendant Townsend. He was permitted to testify, against plaintiff's objection, that he was not a partner of Worden in the business of hauling black-walnut logs. He testified that his arrangement with Worden was as follows:

"I told Worden I would go with him to see the logs and timber, and, if I thought it would do, I would advance him the money; and he was to pay me interest, and for my time I spent."

The defendant Townsend further testified that he was

to have security for the money he let Worden have on the lumber until he got his pay; that he was to have no interest in the proceeds more than to reimburse him for his money, the interest upon it, and his time, and that he went with Worden to examine timber, and spent eight days; that nothing was said as to how much he was to receive a day, but he afterwards charged him $1.50; that he advanced Worden money to buy lumber and logs, and to pay plaintiff for putting in the logs; that he let Worden have money at different times to pay for this lumber, hauling, sawing, etc., and he gave a detailed statement of the sums he had paid directly to different persons for logs, and for hauling and for sawing, and to Worden, aggregating $337.36. From some of the persons from whom logs were purchased, Townsend obtained credit, or time in which to make payment, until after he should receive returns for the lumber. He also testified that the reason why the lumber was shipped or billed in his name was that he expected to receive the pay for the lumber before it was shipped, but, when he found otherwise, he had it shipped in his name; that he received a draft for the avails of $416.94; and he testified that the amount of advances made by him, including $2 for interest and $12 for his time, amounted to $414. He did not explain or account for the difference between the aggregate claimed to have been advanced by him and the amount as shown by his itemized statement.

Partnership liability, at the common law, takes the form of a joint obligation; and especially is this so with reference to third persons. In a proceeding to charge one person with a liability in conjunction with another, the issue is not necessarily upon the existence of a partnership between them, but upon the performance of an act to which the law attaches a joint obligation. Princ.

of Partn. by Jas. Pars. § 44. The learned author further says:

"To admit the plea of no partnership as a defense, and as a corollary to compel the plaintiff to prove the existence of the relation, abrogates the law, by displacing the point of controversy, which is made to turn upon the fact of partnership *inter se*, instead of upon the liability of a man for his acts. The change reverses the order of proof. Every person who performs an act is liable, whether he is a partner or not."

The real test, in actions *ex contractu*, is a joint interest in the contract. Such joint interest makes the parties liable, whether they are partners or not. *Edmunds v. Bushell*, L. R. 1 Q. B. 97; *Eastman v. Clark*, 53 N. H. 276; *Sager v. Tupper*, 38 Mich. 258.

All partners are co-principals, but all co-principals are not partners. Whether they are partners or not depends upon the nature of the act, and the kind and scope of the business in which the act was done; and in determining whether there is a joint interest in the contract the benefit accruing from the contract has an important bearing. The liability does not depend upon the intention of the party to assume the obligation. It is the performance of the act which creates the liability for the consequences, whether done by a single individual or by several. The undertaking carries with it the liabilities which arise out of the business, and they cannot be shaken off. Princ. of Partn. by Jas. Pars. § 45; *Moore v. Davis*, 11 Ch. Div. 261. The law charges the principals in a joint transaction as if they had contracted with each other to perform it. For an act done on behalf of several, the law charges all concerned in the transaction, whether known or unknown, without reference to any agreement, or absence of agreement, upon the subject of their liability. Id. § 46.

From all the testimony in the case, it appears that

Worden and Townsend entered into an agreement to purchase black-walnut logs, have them hauled to a saw-mill, and there sawed into lumber. Worden was to do the buying and attend to the business, and Townsend was to advance the money for that purpose. They jointly examined the timber. Both engaged in treating for the purchase, in some instances. Worden referred the vendors for payment to Townsend, who paid for most of the purchases without the money passing through Worden's hands. He also paid some parties for hauling. He paid for the sawing. It was a part of the contract that he should advance the money to carry the business through. He took no chattel mortgage upon the lumber, but was to have a claim upon the lumber for his security; and out of the proceeds he was to reimburse himself for the money advanced, and interest thereon, and for his services in the carrying on the business venture. Nothing can be plainer than that it was a joint undertaking for their mutual benefit, and that he was a co-principal in the transaction, and as such liable to plaintiff for the balance due him for hauling the logs. The plaintiff was entitled to have his first request given to the jury, which was that, under all the evidence, the plaintiff was entitled to recover.

The statute of frauds was not applicable to the case. The promise of Townsend to plaintiff to pay him the balance due him for hauling and loading was not the promise to answer for the debt or default of another, but it was a promise to pay his own debt, and one which, in his agreement between himself and Worden, by his own testimony, he had agreed to advance the money to pay. It does not matter whether, technically, as between Townsend and Worden, he was a partner or not. He was jointly interested with Worden, in all the contracts, as a principal; and calling him a partner with Worden

does not change or limit his liability as a co-principal with Worden in the venture.

The facts stated by Townsend do not make him a mere lender of money to Worden. The fact that Worden was totally irresponsible would not incline one to believe that Townsend placed the money advanced absolutely in Worden's hands, which is the test whether it is a mere loan or partnership or joint venture. On the contrary, Townsend's testimony shows that he did not place the money absolutely in Worden's hands, and trust to his integrity to put it to the agreed use. He (Townsend) paid the purchase price of the logs in a majority of cases, and this whether he and Worden were together when the bargain was made, or whether Worden agreed for the purchase, assuming in this respect a control in the expenditure and management inconsistent with the relation of a mere lender of money to Worden. The question whether he was a mere lender of money to Worden, or a co-principal in the transaction, turns upon the destination and control of the fund. Townsend not only stipulated that the money should be retained and used in the business, but he managed and controlled the application of the money. Not only that, but he retained control of the lumber in which the money was invested. These acts determined the relation of Townsend with third parties dealing with Worden in pursuance of the common design of Worden and Townsend with reference to the lumber, and attached to Townsend the liability of a partner or joint contractor. The testimony discloses that Worden became indebted to plaintiff for a benefit moving directly and simultaneously from plaintiff to Worden and Townsend, and the same cause which made Worden a debtor to plaintiff necessarily made Townsend a debtor also; and therefore they are jointly liable as partners.

Upon the trial the court regarded the transaction in

relation to buying the logs as so different from the con-
tract to haul the logs to the mill that he struck out the
testimony of the witness McNeal relative to Worden and
Townsend bargaining with him for the purchase of black-
walnut trees in which both took part. In this he erred.
The purchase of the timber, and the hauling to the
mill, were parts of one business transaction, in which these
parties were engaged; and what Townsend did and said in
reference to the purchase had a tendency to prove that
he was a principal with Worden both in purchasing and
in having the logs hauled to the mill. The purchase
would be futile unless the logs were taken to the mill
where they were to be sawed. For the same reason the
court erred in excluding the answer of the witness Baxter
to the question: "State what was said."

Plaintiff's third request was as follows:

"If the jury find that defendant Townsend was to or
did reap the benefit, or a portion of the benefit, from the
lumber transaction, and was jointly interested with Wor-
den in the lumber, he is liable with Worden for the labor
of plaintiff."

The court refused to give this request. It should have
been given.

What we have said in reference to the law which should
be applied in this case renders it unnecessary to particu-
larize the instructions given by the court to the jury upon
which error is assigned. Such portions of the charge as
are not in harmony with what we have stated as the law
are overruled.

The judgment is reversed, with costs, and a new trial
granted.

The other Justices concurred.