Argued July 6, reversed and remanded September 12, rehearing denied
December 27, 1916.

# ANDERSON v. STAYTON STATE BANK.*

(159 Pac. 1033.)

**Bankruptcy—Preference—Recovery by Trustee.**

1. Where the enforcement of a judgment obtained against a bankrupt works a preference within the meaning of the Bankruptcy Act (Act Cong. July 1, 1898, c. 541, 30 Stat. 544), the trustee in bankruptcy is entitled to recover from the judgment creditor the amount received on the judgment.

**Bankruptcy—Preference—Trustee's Action to Set Aside—Grounds.**

2. A trustee in bankruptcy cannot question a judgment against the bankrupt unless he alleges and proves his right to appear as the trustee in bankruptcy, which involves the filing of a petition in bankruptcy, an adjudication, his appointment, and his qualification as trustee of the bankrupt.

**Bankruptcy—Petition—Sufficiency.**

3. An involuntary petition in bankruptcy, setting forth at least one act of bankruptcy within the definition of Bankruptcy Act, Section 3a (U. S. Comp. Stats. 1913, § 9587), and averring that a judgment was obtained by a bank, and that the judgment creditor attached funds and realized on the judgment in full, was sufficient as against attack by such judgment creditor, the defendant in the trustee's action to set aside such judgment as a preference.

**Bankruptcy—Adjudication—Subpoena—Presumption.**

4. An adjudication in bankruptcy of itself imports the existence of all the requisite jurisdictional facts, including the service of a subpoena, especially in a collateral attack.

**Bankruptcy—Election of Trustee—Record.**

5. A record, which gave the title of the cause in bankruptcy, and recited that at the time and place for the first meeting creditors appeared by one having a majority of claims in number and amount of those presented for approval, who nominated and elected plaintiff as trustee, in the absence of any showing that the trustee was elected wrongfully, sufficiently showed, for the purpose of plaintiff's action as trustee to set aside an alleged preference to the defendant, that plaintiff was selected in full compliance with Bankruptcy Act, Section 5b (U. S. Comp. Stats. 1913, § 9589).

*Authorities on the question as to whether or not judgment obtained within the four month period, as affected by Section 60, subdivisions a and b, and Section 67, subdivisions c and f, of the Bankruptcy Act, shall be deemed a preference as against other creditors, are gathered in a note in 41 L. R. A. (N. S.) 204.        REPORTER.

Bankruptcy—Trustee's Bond—Title.

6. The approval of the bond of a trustee in bankruptcy constitutes, under Bankruptcy Act, Section 21e (U. S. Comp. Stats. 1913, § 9605), conclusive evidence of the vesting of the title of the bankrupt's property in him.

Bankruptcy—Preference—Trustee's Action to Set Aside—Grounds.

7. Under Bankruptcy Act, Sections 60a, 60b, as amended (U. S. Comp. Stats. 1913, § 9644), authorizing a trustee in bankruptcy to set aside a preference, the trustee in such action must show that the debtor was insolvent at the time of the entry of the judgment; that he suffered the judgment to be entered within four months of the filing of a petition in bankruptcy; that the enforcement of the judgment obtained for the judgment creditor a greater percentage of its debt than any other creditor of the same class; and that the judgment creditor had reasonable cause to believe that the effect of such judgment was to give a preference within the meaning of the Bankruptcy Act.

Bankruptcy—Preference—Judgment—Time.

8. In an action by a trustee in bankruptcy to set aside an alleged preference, the suffering of a judgment to be entered within four months before the filing of the petition in bankruptcy was established by showing that all the proceedings from the commencement of the judgment creditor's action to the entry of its judgment, including the issuance and return of the execution and the enforced payment of the judgment, occurred within four months before the filing of the petition.

Bankruptcy—Preference—Class—Notes.

9. Claims against a partnership and claims against one of the partners were not in the same class as the notes signed by such partner and the other partner in their individual names in adjustment of a claim against the partnership, in respect to a preference alleged to have been obtained by the holder of such notes.

Bills and Notes—Form—Joint Note.

10. Notes containing the language, "We promise to pay to the order of" the payee, signed by a lumber company and by each of the partners doing business under such firm name, were "joint notes."

[As to liability of partnership on note executed in name of a single partner, see note in Ann Cas. 1912A, 618.]

Bills and Notes—Form—"Joint and Several Note."

11. Notes executed in adjustment of a claim against a partnership doing business under the firm name and style of a company, after the time for payment had been extended and the firm had paid the interest, signed by each of the partners, were "joint and several notes" within Section 5850, L. O. L., declaring certain notes to render the signers jointly and severally liable thereon.

Bills and Notes—Joint and Several Note—Liability—Consideration.

12. Where joint and several notes executed by the partners of a firm originated in a partnership indebtedness to a third party, the extension of time for the payment of such indebtedness granted by the creditor's assignee furnished a sufficient consideration for the lia-

bility which the individual partners incurred when they signed such notes.

#### Partnership—Joint and Several Note—Payment—Fund.

13. The individuals constituting a partnership signing joint and several notes were jointly and severally liable, and the payee might look to their individual assets for payment, or to the partnership estate for payment, where the notes arose out of a partnership indebtedness.

#### Bankruptcy—Partnership—Joint and Several Notes—Claim.

14. The holder of joint and several notes executed by the individuals composing a partnership in the adjustment of a partnership debt might share with claims against the partnership in bankruptcy and at the same time participate in dividends upon claims against the individuals, on the theory that the notes represented a firm indebtedness and at the same time a primary individual obligation.

#### Bankruptcy—Individual and Partnership Liabilities—Class.

15. Such holder would be obliged to share with creditors of the same class holding claims against one of the individual partners, but could compel the payment of its notes in full before any dividends were paid out of the individual estate on pure partnership debts, even though there were no firm assets; the course to be pursued being regulated by Bankruptcy Act, Section 5f (U. S. Comp. Stats. 1913, § 9589), declaring that the net proceeds of partnership property shall be appropriated to the payment of the partnership debts and the net proceeds of the individual estate of each partner to the payment of his individual debts, and that the surplus of the property of any partner after paying his individual debts should be added to the partnership assets and applied to partnership debts, and the surplus of partnership property, after payment of debts, shall be added to the assets of the individual partners.

#### Partnership—Indebtedness—Payment.

16. A partnership debt is primarily the obligation of the partnership, and secondarily the obligation of the individuals composing it, and, therefore, the liability of the individual is contingent, and partnership assets must be exhausted before he is obliged to pay out of his own estate.

#### Partnership—Joint Note—Liability of Partners and Partnership.

17. Joint notes, on their face purporting to be the obligation not only of a partnership as such, but also of the individual partners whose names appeared thereon with the name of the firm, were intended to give the holder not only the security afforded by the partnership, but the security of the individual signers; the fact that the notes were joint not necessarily implying that they were the debt of none of the signers except the partnership, and the joint notes of the partners for a debt in no way connected with the partnership, not making them a primary claim against the partnership merely because it was joined.

#### Contracts—Joint and Several Contract—Liability of Promisor.

18. A joint and several contract is with each promisor and also with all jointly, with the result that they are all jointly liable, and each

individual is liable upon his separate obligation, and they may be sued jointly or severally as the promisee may elect.

### Contracts—Judgment—Joint Contract—Nature of Obligation.

19. A joint contract is with all the promisors together, with the result that all must be sued jointly if either promisor objects to a suit or action brought against less than all; but, if a judgment is obtained without objection against less than all who are jointly liable, the entire debt is merged in the judgment.

### Execution—Joint and Several Note—Judgment—Satisfaction.

20. A judgment against joint and several promisors does not give the judgment creditor any rights for the collection of the debt not possessed by the owner of the judgment against persons who are merely joint debtors, and who have been served with summons, though the judgment debtor may seize the property of all or the property of each if he chooses, and is not obliged to look to one before he calls upon the other for payment.

### Execution—Joint Note—Judgment—Satisfaction.

21. Where all the promisors on a joint obligation are served with summons and a judgment secured against them, the judgment creditor is not obliged to exhaust the joint property before seizing the separate property of the individual promisors, because he may do so as he chooses, since a joint obligor is liable *in solido* for the whole debt.

### Execution—Judgment—Joint Obligors—Satisfaction—Statutes.

22. Under Section 61, L. O. L., prescribing how the plaintiff may proceed when the action is against two or more defendants when a summons is served upon one or more, but not all of them; Section 181 providing for judgment against one or more of several defendants, and Section 188 providing for judgment against several defendants on the confession of one, plaintiff, though service cannot be obtained on all those jointly liable on a contract, may have judgment against all, and may satisfy it with the joint property of all the promisors, or the individual property of the several promisors who have been served with summons, and is not obliged to exhaust the joint property before calling upon the separate estates for payment.

### Bankruptcy—Claims—Class.

23. In bankruptcy a pure partnership creditor is not in the same class as a creditor holding a claim against an individual member of the partnership.

### Bankruptcy—Claims—Preference—"Class."

24. Under Bankruptcy Act, Sections 60a, 60b, as amended, relating to preferences as between creditors of the same class, the term "class" defines those creditors who are entitled to receive out of the bankrupt estate the same percentage of their claims, however much they may have the right to collect from others than the bankrupt, so that in the bankruptcy proceeding of a partnership and both of its members, joint notes signed by the partnership and by each of the partners in the order named, and joint and several notes signed by the partners in adjustment of a partnership debt, belonged to the fourth class of credi-

tors of a partner entitled to the same percentage of dividends, and the enforcement of a judgment on the joint and several notes would work a preference and entitle the trustee to recover from such creditor the amount received on the judgment.

From Marion: PERCY R. KELLY, Judge.

Department 2.   Statement by MR. JUSTICE HARRIS.

This is an action by A. J. Anderson, as trustee in bankruptcy of the estate of Roy H. Wassom and M. A. McLaughlin, partners, doing business under the firm name and style of the Salem Lumber Company, and as trustee of the estate of Roy H. Wassom and M. A. McLaughlin individually, against the Stayton State Bank.

Claiming that within the meaning of the National Bankruptcy Act a preference was effected when the defendant received $730.32 in satisfaction of a judgment against Roy H. Wassom and M. A. McLaughlin, the plaintiff, as trustee in bankruptcy, is attempting to recover that amount from the defendant.   The Stayton State Bank is a corporation and, as its name implies, is doing a banking business.   The Salem Lumber Company is a partnership, with Roy H. Wassom and M. A. McLaughlin as the partners composing the firm.

The Gooch Lumber Company sold some lumber to the partnership, with an understanding ''as to additional time other than the regular sixty day terms.'' The seller assigned the invoices for the lumber to the defendant, for the reason that the former wished immediately to realize money on the sale.   The defendant presented the invoices for payment when they became due.   The partnership was not able to pay, but an adjustment was made on March 6, 1914, by the bank extending the time for payment and the firm paying the interest on the account to that date, and

by Roy H. Wassom and M. A. McLaughlin sign-ing four joint and several promissory notes for the aggregate sum of $635, the amount due on the in-voices, payable to the Stayton State Bank. The notes having matured and being unpaid, the bank com-menced an action on the four notes against Wassom and McLaughlin on July 16, 1914, in the Circuit Court for Marion County. An attachment was levied on July 18th, on funds which M. A. McLaughlin had to his credit in the United States National Bank of Salem. A judgment was entered on July 30, 1914, against Wassom and McLaughlin for the amount of the notes, attorney fees, with costs and disbursements, and an order was made, directing that the attached funds be applied in satisfaction of the judgment. On the following day, July 31st, an execution was issued on the judgment, and the sheriff promptly returned the execution together with $730.32 of the attached funds which he delivered to the clerk; and on August 15, 1914, the county treasurer paid the entire sum to the Stayton State Bank in satisfaction of the judg-ment. A petition in involuntary bankruptcy was filed on September 12, 1914, against the partnership, and also against Roy H. Wassom and M. A. McLaughlin individually, and they were all adjudged bankrupts. A. J. Anderson was elected trustee in bankruptcy for the bankrupts, and on October 31, 1914, he qualified as such trustee. Wassom has no assets, and the prop-erty of the partnership will not meet its liabilities.

The plaintiff alleges that at and prior to the time when the defendant obtained its judgment it had reasonable cause to believe that Wassom, McLaughlin and the partnership were insolvent, "and that the en-forcement of such judgment would effect a preference and would cause a diminution of the assets of said

bankrupts and each of them to the exclusion of the rights of other creditors of said bankrupts, and particularly of creditors of same class''; and ''that defendant knew at the time it received said $730.32, and for a long time prior thereto, that the same would constitute a preference.''

The defendant denies that it had reasonable cause to believe that either the partnership or the persons composing it were insolvent; and the bank alleges that the enforcement of its judgment ''will not enable this defendant to obtain a greater percentage of its claim than any other of the creditors of said M. A. McLaughlin of the same class.'' A trial resulted in a judgment of nonsuit, and the plaintiff appealed.

Reversed and Remanded.

For appellant there was a brief with oral arguments by *Mr. Walter E. Keyes* and *Mr. Frederick S. Lamport.*

For respondent there was a brief over the names of *Mr. Samuel T. Richardson* and *Mr. W. E. Richardson,* with an oral argument by *Mr. Samuel T. Richardson.*

Mr. Justice Harris delivered the opinion of the court.

1, 2. If the enforcement of the judgment, which the Stayton State Bank obtained against Roy H. Wassom and M. A. McLaughlin, worked a preference within the meaning of the Bankruptcy Act, then the trustee in bankruptcy would be entitled to recover from the bank the sum of $730.32, which it received on its judgment. The plaintiff, however, cannot question the judgment unless he first alleges and proves his right to appear as the trustee in bankruptcy, which in-

volves: (a) The filing of a petition in bankruptcy; (b) the adjudication; (c) the appointment of plaintiff; and (d) the qualification as trustee of the bankrupt: 2 Loveland, Bankruptcy (4 ed.), § 545.

3. An involuntary petition in bankruptcy was filed by three creditors. While the petition is not as full as it might be, yet it contains enough to meet the objection of insufficiency made by the defendant. Form No. 118, found in Collier on Bankruptcy (9 ed.), page 1228, seems to have been taken as the model for drafting the petition. At least one act of bankruptcy within the definition of Section 3a of the Bankruptcy Act is set forth: 30 U. S. Stats. at Large, 546. The petitioners aver, not only that a judgment was obtained by the Stayton State Bank, but also that the judgment creditor attached funds and realized on the judgment in full. The petition challenged here did more than merely to allege the rendition of a judgment, and it is therefore unlike the petition condemned in *Re Pressed Steel Wagon Goods Co.* (D. C.), 193 Fed. 811. The petition contains sufficient allegations to render it invulnerable to attack here, and the defendant cannot take advantage of mere defective allegations: 1 Remington, Bankruptcy (2 ed.), page 366.

4. The defendant is insisting that the adjudication is inoperative, because the record does not show the service of a subpoena as required by the Bankruptcy Act. The answer to this objection is that the record does not affirmatively show that a subpoena was not served. There was an adjudication, and this of itself imports the existence of all the requisite jurisdictional facts, especially in a collateral attack: 1 Remington, Bankruptcy (2 ed.), pp. 364, 386; *Huttig Mfg. Co.* v. *Edwards,* 20 Am. Bank. R. 349, 160 Fed. 619 (87

C. C. A. 521); 2 Remington, Bankruptcy (2 ed.), p. 1651.

5. The validity of the appointment of the trustee is also challenged. After giving the title of the cause and reciting that, "this being the time and place for the first meeting of creditors in the above matter in bankruptcy," the record of the first meeting of creditors states that creditors appeared by Fred Lamport "who having a majority of claims in number and amount of those presented for approval, nominated and elected Mr. A. J. Anderson of Salem, Oregon, as trustee." The defendant has not shown that the trustee was selected wrongfully, and the record contains no intimation that the trustee was elected by persons who were not creditors of the partnership. The recital of the appointment sufficiently shows for the purpose of this litigation, especially in the absence of any evidence to the contrary, that the trustee of the partnership estate was selected in full compliance with Section 5b of the Bankruptcy Act: 2 Remington, Bankruptcy (2 ed.), § 1736.

6. A certified copy of an order shows that the bond of the trustee was approved, and therefore, in the language of Section 21e of the Bankruptcy Act, it "shall constitute conclusive evidence of the vesting in him of the title to the property of the bankrupt": 30 U. S. Stats. at Large, 552; Collier, Bankruptcy (9 ed.), 462.

7. The plaintiff has alleged the requisite facts to entitle him to sue as the trustee in bankruptcy, and he has also offered evidence in support of each of these allegations. It is not enough, however, for the plaintiff to show that he has authority to appear as the trustee of the bankrupt, but he must also allege and prove all the statutory elements of a preference before he can recover from the defendant: 2 Loveland, Bank-

ruptcy (4 ed.), § 545; 2 Remington, Bankruptcy (2 ed.), § 1762. We must look to the statute itself for a definition of the acts which are condemned as preferences, and on that account we here set down all that part of Section 60 of the National Bankruptcy Act which is material to this controversy and as it now reads:

"(a) A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, * * and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required": Act Cong. Feb. 5, 1903, c. 487, § 13; 32 U. S. Stats. at Large, p. 799.

"(b) If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person. And for the purpose of such recovery any court of

bankruptcy, as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction": Act Cong. June 25, 1910, c. 412, § 11; 36 U. S. Stats. at Large, p. 842.

An analysis of the quoted statute will reveal that, to establish a preference, the trustee in the instant litigation must show: (1) That the debtor was insolvent at the time of the entry of the judgment; (2) that the debtor suffered the judgment to be entered within four months before the filing of the petition; (3) that the enforcement of the judgment secured by the Stayton State Bank against Wassom and McLaughlin obtains for the bank a greater percentage of its debt than any other creditor of the same class; and (4) that the bank or its agent had reasonable cause to believe that the effect of such judgment was to give a preference within the meaning of the acts of Congress relating to bankruptcy: 2 Loveland, Bankruptcy (4 ed.), § 545; *In re F. M. & S. Q. Carlile* (D. C.), 199 Fed. 612; *Painter* v. *Napoleon Tp.* (D. C.), 156 Fed. 289.

8. Much is said in the briefs concerning the first and fourth elements of a preference, but it is sufficient here to say that the plaintiff offered enough evidence to entitle him to go to the jury on these two questions. The second element of a preference is established, because all the proceedings from the commencement of the action by the Stayton State Bank against Wassom and McLaughlin to the entry of the judgment, including the issuance and return of the execution and the enforced payment of the judgment with moneys belonging to McLaughlin individually, occurred within four months before the filing of the petition: 2 Remington, Bankruptcy (2 ed.), § 1384½; Brandenburg,

Bankruptcy (3 ed.), § 949; Collier, Bankruptcy (9 ed.), p. 800; 1 Loveland, Bankruptcy (4 ed.), p. 323. The third essential element of a preference will now require attention.

9. The defendant contends that there is no evidence of any claim which would be entitled to be paid before or even to share with the judgment obtained against Wassom and McLaughlin. The plaintiff insists that the claim held by the Stayton State Bank did not stand in a class by itself, but that there are other creditors whose claims are entitled to share with the bank in the funds belonging to the individual estate of M. A. McLaughlin. During the trial the plaintiff offered, but the court refused to receive in evidence, a large number of claims, some of which were against Wassom individually, while the remainder were against the partnership. Three notes owned by the Silverton Lumber Company were received in evidence. Each of these three notes says that, "We promise to pay to the order of the Silverton Lumber Company." and is signed by the Salem Lumber Company, Roy H. Wassom and M. A. McLaughlin in the order named. The court also received in evidence the four notes upon which the defendant secured its judgment against Wassom and McLaughlin. Each of these four notes states that, "I promise to pay to the order of Stayton State Bank," and is signed by Roy H. Wassom and M. A. McLaughlin. When the judgment of nonsuit was granted, four groups of claims had been brought to the attention of the court: (1) Claims against the partnership; (2) claims against Wassom; (3) the three notes held by the Silverton Lumber Company; and (4) the four notes executed to the Stayton State Bank. The claims belonging to the first two groups were not received in evidence, nor can it be urged that they are

in any sense in the same class as the notes given to the Stayton State Bank. The notes representing the third and those falling in the fourth group are in evidence, and the main contest centers around these two groups of claims, with the defendant strenuously urging that the Silverton Lumber Company is not a creditor of the same class as the bank and plaintiff striving to maintain his position that the bank is not a creditor of a class different from the Silverton Lumber Company.

10, 11. The notes held by the Silverton Lumber Company are joint: 7 Cyc. 653. The instruments executed to the Stayton State Bank are joint and several obligations: 7 Cyc. 656; Section 5850, L. O. L.; *Noble v. Beeman-Spaulding-Woodward Co.,* 65 Or. 93, 106 (131 Pac. 1006, 46 L. R. A. (N. S.) 162).

12-14. This controversy presents a situation where a partnership and both its members are in bankruptcy; the Silverton Lumber Company notes are joint, while the Stayton State Bank notes are joint and several; the joint notes are signed by the partnership and also by the individuals who compose the partnership, but the joint and several notes are signed by the individuals only; the evidence shows that the joint and several notes are founded on a partnership debt, but the record does not disclose the origin of the joint notes; the joint and several notes have been paid with funds belonging to one of the individual signers, while no payments have been made on the joint notes; and therefore the question for discussion is whether the joint notes are in the same class as the joint and several notes within the purview of the National Bankruptcy Act.

An understanding of the *status* of the Silverton Lumber Company or joint notes can best be reached

by first noticing the different funds which may be made available for the payment of the Stayton State Bank or joint and several notes. The origin of the joint and several notes is found in the indebtedness of the partnership to the Gooch Lumber Company, but the extension of time for the payment of that indebtedness furnished a sufficient consideration for the liability which the individuals incurred when they signed those notes: *Merchants' Bank* v. *Thomas,* 121 Fed. 306 (57 C. C. A. 374). The individuals who signed the joint and several notes are jointly and severally liable, and therefore the payee can look to the individual estates of Wassom and McLaughlin for payment, or, if it wishes, the bank may look to the partnership estate for payment, for the reason that the evidence shows that the notes arose from an indebtedness of the Salem Lumber Company to the Gooch Lumber Company. Under all the authorities the Stayton State Bank can elect to share in the partnership assets, since the notes held by it spring from a partnership indebtedness and are signed by the persons composing the firm, or the bank may, if it chooses, look to the individual estates of Wassom and McLaughlin, or either of them, for payment, since they have signed their own names as individuals. In the instant case the bank exercised an indubitable right when it elected to call upon the individual property of McLaughlin for payment. While it is not necessary to decide whether the Stayton State Bank could share in the assets of both the partnership and the individual estates, yet it is not going far afield to say that these notes can share with claims against the partnership and at the same time participate in dividends with claims against the individuals on the theory that the notes in truth represent a firm indebtedness, and at the same time evidence a

primary individual obligation: *Ex parte Nason,* 70
Me. 363; *In re Bucyrus Mach. Co.,* 5 N. B. R. 303 (Fed.
Cas. No. 2100); *Stephenson* v. *Jackson,* 9 N. B. R.
255 (Fed. Cas. No. 13,374); *In re Bradley,* 2 Biss. 515
(Fed. Cas. No. 1772); *In re McCoy,* 17 Am. Bank. R.
760 (150 Fed. 106, 80 C. C. A. 60); *Winslow* v. *Wallace,* 116 Ind. 317 (17 N. E. 923, 1 L. R. A. 179); *Mock*
v. *Stoddard,* 24 Am. Bank. R. 403 (177 Fed. 611, 101
C. C. A. 237); *In re Thomas,* 8 Biss. 139 (Fed. Cas.
No. 13,886); *Matter of Gray,* 111 N. Y. 404 (18 N. E.
719); 5 Cyc. 417.

15, 16. While the Stayton State Bank would be
obliged to share with creditors of the same class holding claims against McLaughlin as an individual, still
the bank can compel the payment of its notes in full
before any dividends are paid out of the individual
estate on pure partnership debts, even though there
are no firm assets: *In re Knowlton & Co.,* 202 Fed.
480 (120 C. C. A. 610); *In re Telfer,* 184 Fed. 224 (106
C. C. A. 366); *In re Janes,* 133 Fed. 912 (67 C. C. A.
216); *In re Henderson* (D. C.), 142 Fed. 588; *In re
Hull* (D. C.), 224 Fed. 796; *Farmers' Bank* v. *Ridge
Ave. Bank,* 240 U. S. 498 (60 L. Ed. 767, 36 Sup. Ct. Rep.
461.)   A pure partnership debt is primarily the obligation of the firm, and secondarily the obligation of
the individuals composing the firm, and therefore the
liability of the individual is contingent, and hence
partnership assets must be exhausted before a member of the firm is obliged to pay out of his own estate.
To the primary partnership liability the persons composing the partnership have, by signing their names
to the Stayton State Bank notes as individuals, added
a primary personal liability, so that both the partnership and the persons composing it are primarily liable,
and therefore on principle the Stayton State Bank is

empowered to look to McLaughlin, if it chooses, for payment of its notes to the exclusion of debts incurred by the partnership standing alone. Moreover, Section 5 of the Bankruptcy Act points out the course to be pursued by declaring that:

"(f) The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of his individual debts. Should any surplus remain of the property of any partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus shall be added to the assets of the individual partners in the proportion of their respective interests in the partnership": 30 U. S. Stats. at Large, p. 548.

17. The defendant argues that the Silverton Lumber Company notes stand in the same relation to the Stayton State Bank notes as a pure partnership debt, and that therefore the former cannot call for dividends out of the individual estate of McLaughlin until the bank notes are first paid in full. If the joint notes occupy the same position as a note signed by the partnership only, then the conclusion contended for by the defendant is inevitable. There is no evidence of the origin of the Silverton Lumber Company notes. The defendant urges, however, that *prima facie* these notes represent a partnership debt, because the name of the firm appears as one of the makers of the paper; but by the same token the paper is *prima facie* the obligation also of the individuals who signed because their names appear in addition to the names of the partnership: 2 Remington, Bankruptcy (2 ed.), §§ 2240, 2263. On its face each of the Silverton Lumber Com-

pany notes purports to be the obligation, not only of
the partnership as such, but also of the individuals
whose names appear with the name of the firm.    It is
at least fair to assume that the parties intended that
the holder of the notes would have, not only the secu-
rity afforded by the partnership as such, but the con-
temporaneous security furnished by the individuals.
The fact that the note is joint does not necessarily
imply that it is the debt of none of the signers except
the partnership.    The joint note of Wassom and
McLaughlin for a debt in no way connected with the
partnership would not make it a primary claim against
the partnership merely because the partnership is
joint: 2 Remington, Bankruptcy (2 ed.), § 2244.    On
the record as it is presented to us the notes held by
the Silverton Lumber Company must be deemed to
be the joint notes of the partnership considered as
such, and of Wassom and McLaughlin regarded as in-
dividuals, because that is exactly what the paper pur-
ports to be: *Hosmer* v. *Burke,* 26 Iowa, 353.    The final
chapter of this contest presents a conflict between
joint and several notes on the one hand and joint notes
on the other, and for that reason it will be proper to
note some of the characteristics of each kind of obli-
gation, as well as the difference between them.

18–21. A joint and several contract is with each
promisor and also with all jointly, with the result that
they are all liable together on the joint obligation, and
each individual is liable upon his separate obligation,
and they may be sued jointly or severally as the prom-
isee may elect: 9 Cyc. 657.    A joint contract, however.
is with all the promisors together, with the result that
all must be sued jointly if either promisor objects to
a suit or action brought against less than all; but if a
judgment be obtained without objection against less

than all who are jointly liable, the entire debt is merged in that judgment: *Ryckman* v. *Manerud,* 68 Or. 350 (136 Pac. 826, Ann. Cas. 1915C, 522). Ordinarily, a release of one frees all: 9 Cyc. 654. Although a promisee may sue all or only one of two or more joint and several promisors, nevertheless a judgment obtained against joint and several promisors does not give to the judgment creditor any rights for the collection of the debt which are not possessed by the owner of a judgment against persons who are merely joint debtors and who have been served with summons. The owner of a judgment against persons who are jointly and separately liable may seize the property of all or the property of each if he chooses, and he is not obliged to look to one before he calls upon the other for payment. If all the promisors on a joint obligation are served with summons and a judgment secured against them, then the owner of the judgment is not obliged to exhaust the joint property before seizing the separate property of the individual promisors because he may do as he chooses (*Godfrey* v. *Gibbons,* 22 Wend. (N. Y.) 569; *West Duluth Land Co.* v. *Bradley,* 75 Minn. 275 (77 N. W. 964); *Low* v. *Adams,* 6 Cal. 277; 17 Cyc. 1082), for the reason that in a joint, as well as in a joint and several, obligation each obligor who is bound at all is liable *in solido* for the whole debt: 9 Cyc. 653; *Allin* v. *Sharburne's Exr.,* 1 Dana (Ky.), 68 (25 Am. Dec. 121); *Ripley* v. *Crooker,* 47 Me. 370 (74 Am. Dec. 491); *Dumanoise* v. *Townsend,* 80 Mich. 302 (45 N. W. 179); *Alpaugh* v. *Wood,* 53 N. J. Law, 638 (23 Atl. 261); *Gray* v. *Rollo,* 18 Wall. 629 (21 L. Ed. 927).

22. Even though service cannot be obtained on all those who are jointly liable on a contract, still our statutes authorize the court to permit the promisee to

have a judgment against all, and he may satisfy that judgment with the joint property of all the promisors or the individual property of the separate promisors who have been served with summons, and, furthermore, the judgment creditor is not obliged to exhaust the joint property before calling upon the separate estates for payment: Sections 61, 181 and 188, L. O. L.; *Stivers* v. *Byrkett,* 56 Or. 565, 571 (108 Pac. 1014, 109 Pac. 386) ; *Bertin & Lepori* v. *Mattison,* 80 Or. 354 (157 Pac. 153).

23. While it is true that a joint claim is burdened with some incidental encumbrances which may hinder its prosecution to judgment, yet, in the final analysis, a joint promise makes each promisor liable for the whole debt, and the liability of the individual is not secondary as in the case of partners. A joint and several debt and also a joint debt are unlike a pure partnership debt, because the latter creates a primary charge against the partnership fund and a secondary charge against the separate funds of the persons who compose the partnership, and it necessarily follows that a pure partnership creditor is not in the same class as a creditor who holds a claim against an individual who happens to be a member of the partnership. Neither the Silverton Lumber Company notes nor the Stayton State Bank notes are pure partnership debts, but both groups of notes are unsecured claims against the persons whose names appear as makers, and as such unsecured claims they are entitled to receive dividends from the estate of each promisor: *Board of County Commrs.* v. *Hurley,* 169 Fed. 92, 97 (94 C. C. A. 362).

24. Both the Silverton Lumber Company and the Stayton State Bank were creditors of McLaughlin on July 16, 1914, when the action was commenced against

Wassom and McLaughlin, and consequently the enforcement of the judgment obtained by the bank will work a preference if the two creditors belong to the same class.    The meaning of the word "class" as used by the Bankruptcy Act is explained in *Swarts* v. *Fourth Nat. Bank,* 8 Am. Bank. R. 673, 680 (117 Fed. 1, 54 C. C. A. 387), where the court says:

"While it is true that the Bankrupt Act does not define the word 'class,' nor in terms state what creditors are in the same class, it creates some classes, and specifies others, and it seems to us that the meaning of the word 'class' in the act should, if possible, be derived from the statute itself.    Section 64, after directing the payment of certain expenses of administration, creates three classes of creditors: Parties to whom taxes are owing; employees holding claims for certain wages; and those who, by the laws of the States or of the United States, are entitled to priority. Sections 56b, 57e and 57h provide for the treatment and disposition of claims secured by property, and of claims which have priority.    The creditors who hold these various claims, and the general creditors of the estate, constitute the classes of creditors of which the Bankrupt Act treats.    Now, if any one of these various classes is taken by itself and examined, it will be seen that each one of the creditors in the same class always receives the same percentage upon his claim, out of the estate of the bankrupt that every other creditor of his class receives.    Where the estate is insufficient to pay the claims of different classes in full, the classes receive, out of the bankrupt estate, different percentages of their claims, but creditors of the same class receive the same percentage.    The test of classification is the percentage paid upon the claims out of the estate of the bankrupt. * * Those creditors who are entitled to receive out of the estate of the bankrupt the same percentage of their claims are in the same class, however much their owners may have the right to collect from others than the bankrupt. Their relations to third parties, their right to collect

of others, the personal security they may have through indorsements or guaranties, receive no consideration, no thought. It is the relation of their claims to the estate of the bankrupt, the percentages their claims are entitled to draw out of the estate of the bankrupt, and these alone, that dictate the relations of the creditors to the estate, and fix their classification and their preferences'': 2 Remington, Bankruptcy (2 ed.), § 1387; 1 Loveland, Bankruptcy, § 513.

Both groups of notes belong to the fourth class of creditors of McLaughlin, and therefore the Silverton Lumber Company notes would be entitled to the same percentage of dividends as the Stayton State Bank notes could claim from the individual estate of McLaughlin; and the conclusion follows that both groups of notes are held by creditors of the same class. It was error to allow a nonsuit.

The judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.                     REVERSED AND REMANDED.

REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE McBRIDE concur.